### STATE OF CONNECTICUT *v.* REX SNOOK
### (13218)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued December 13, 1988—decision released March 7, 1989

*Donald D. Dakers,* public defender, for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, for the appellee (state).

GLASS, J. The defendant, Rex Snook, was charged in a substitute information with one count of sexual assault in the second degree, in violation of General Statutes § 53a-71 (a) (4),[1] two counts of risk of injury to a minor, in violation of General Statutes § 53-21,[2] and one count of sexual assault in the third degree, in violation of General Statutes § 53a-72a (a) (2).[3] After a

---

[1] General Statutes § 53-71 (a) (4) provides: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is . . . (4) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare." Because the state's allegations of sexual assault in the second degree covered a period of time from June, 1979, through January, 1984, the state included in its information General Statutes § 53a-71 (a) (3). In 1983, the legislature amended this statute and renumbered subsection (a) (3) to (a) (4). Public Acts 1983, No. 83-326. The charge of violating § 53a-71 (a) (3) was intended to cover acts occurring before the effective date of the 1983 legislation.

[2] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] General Statutes § 53a-72a (a) (2) provides: "A person is guilty of sexual assault in the third degree when such person . . . (2) engages in sexual intercourse with another person whom such person knows to be related to such person within any of the degrees of kinship specified in section 46b-21." Similar to the charge of sexual assault in the second degree, the state's allegations of sexual assault in the third degree covered a period of time from June, 1979, through January, 1984. Prior to 1980, the prohi-

jury verdict of guilty as charged on all four counts, the trial court sentenced the defendant to incarceration for a total effective sentence of twenty-two and one-half years to twenty-five years. The defendant appeals from the judgment rendered on the verdict. We find no error.

Prior to trial, the state moved to have the testimony of the minor victim, the defendant's eight year old daughter, taken on videotape outside the physical presence of the defendant, pursuant to General Statutes § 54-86g.[4] Over the defendant's objection, the trial court granted the state's motion without an evidentiary hearing. At trial, the victim's videotaped testimony was admitted into evidence over the defendant's objection.

bition against sexual intercourse by a person within the specified degrees of kindred of the other appeared in General Statutes § 53a-191. In 1980, the legislature amended these statutes to add subsection (2) to § 53a-72a (a). Public Acts 1980, No. 80-346. Consequently, the state included in its information General Statutes § 53a-191 to cover acts occurring before the effective date of the 1980 legislation.

General Statutes § 46b-21 provides: "No man may marry his mother, grandmother, daughter, granddaughter, sister, aunt, niece, stepmother or stepdaughter, and no woman may marry her father, grandfather, son, grandson, brother, uncle, nephew, stepfather or stepson. Any marriage within these degrees is void."

[4] General Statutes § 54-86g provides: "(a) In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the testimony of the child be taken in a room other than the courtroom in the presence of and under the supervision of the trial judge hearing the matter and be televised by closed circuit equipment in the courtroom or recorded for later showing before the court. Only the judge, the attorneys for the defendant and for the state, persons necessary to operate the equipment and any person who would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. The attorneys and the judge may question the child. The defendant may observe and hear the testimony of the child and may consult with his attorney, but the court shall ensure that the child cannot hear or see the defendant.

"(b) If the court orders the testimony of a child to be taken under subsection (a) of this section, the child shall not be required to testify in court at the proceeding for which the testimony was taken."

The jury could reasonably have found the following facts. The victim was born on January 19, 1978, and lived with her parents in Guilford. On January 10, 1984, the victim disclosed to her mother that the defendant on several occasions had awakened the victim at night, brought her into the bathroom, and performed oral and vaginal intercourse with her. In her videotaped testimony, the victim related two incidents in which the defendant engaged in various sexual activities with her while they had left the house to go for a walk and to fly a kite. The victim testified that on another occasion, the day of her birthday, while her mother was out shopping for a birthday present, the defendant brought her into a closet in their house, removed his pants and her pants, and rubbed her vagina. He then made her sit on his penis. This incident was interrupted when the defendant heard the mother's car door slam. The victim's mother testified that the last incident occurred on the victim's fifth birthday.

In early 1984, the victim substantially repeated the information she had disclosed to her mother to a psychologist, a social worker, and a detective of the Guilford police department, all of whom testified at the trial. The state also presented evidence that for one and one-half to two years after the victim had turned two years old, the victim experienced bed wetting and urine and stool incontinence. The victim was periodically treated by pediatricians, who noted instances of vaginal inflammation, irritation and discharge.

The defendant appealed his conviction, asserting several errors in the trial, including the claim that the trial court erred in granting the state's motion to videotape the victim's testimony under General Statutes § 54-86g without requiring any evidence on whether the victim would be harmed by testifying at the trial before the defendant. On October 2, 1987, we remanded this case to "afford an opportunity to supplement the record at

an evidentiary hearing addressing the criteria set forth in *State* v. *Jarzbek,* 204 Conn. 683, 704–705 [529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988)] . . . ." At the remand hearing, the state and the defendant were permitted to present evidence. The state was required to demonstrate by clear and convincing evidence that the "minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question." Id., 705. On June 6, 1988, the trial court issued a memorandum of decision following the hearing on remand, in which it found "beyond a reasonable doubt" that the victim's fears and anxieties concerning the defendant were so great that the physical presence of the defendant would so intimidate her as seriously to call into question her reliability as a witness.

In his initial and supplemental briefs, the defendant claims that: (1) General Statutes § 54-86g is unconstitutional as written and as applied to him since it permitted the trial court to allow the victim's testimony to be videotaped outside his presence without any evidence of need, and further, that the remand hearing in this case was improper since the state should not have been allowed to "create" a record retroactively on this issue; (2) the trial court erred in allowing the state to add a second count of risk of injury to a minor after the victim's testimony was taken; (3) there was insufficient evidence to convict him of the added risk of injury count; (4) the convictions and subsequent consecutive sentences for the two risk of injury counts, and the convictions and subsequent consecutive sentences for the crimes of sexual assault in the second degree and sexual assault in the third degree, both violated his constitutional rights against double jeopardy; (5) the second degree sexual assault charge for which he was prosecuted, under General Statutes

§ 53a-71 (a) (4), does not apply to sexual intercourse between a parent and his child; (6) the trial court's supplemental instructions pertaining to the risk of injury counts did not cure the overbroad and misleading original instructions; and (7) the trial court's instructions on sexual assault in the second and third degrees erroneously misled the jury to believe that the crimes could be committed by "sexual contact" alone. We find no error.

## I

In his supplemental brief, the defendant claims that § 54-86g, as written and as applied, violated his state and federal constitutional rights of confrontation, since it permitted the trial court to grant the state's motion to videotape the minor victim's testimony outside the defendant's physical presence without any evidence demonstrating the need to resort to the videotape procedure. The defendant concedes that he failed to raise the constitutionality of the statute in his original brief, but argues that this claim should be reviewed because he raised it by way of a motion for a new trial subsequent to the order of remand and because the claim implicates fundamental constitutional rights. See *State v. Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973). He also claims that our order of remand violated his due process rights by permitting the state to "create" a record on the issue of the need to use the videotape procedure of § 54-86g where no prior record existed. See *Drope v. Missouri*, 420 U.S. 162, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975). We agree that this claim implicates the fundamental constitutional right of confrontation and is reviewable under *State v. Evans*, supra. See *State v. Jarzbek*, supra.

## A

General Statutes § 54-86g provides in relevant part that "[i]n any criminal prosecution of an offense involv-

ing assault, sexual assault or abuse of a child twelve years of age or younger, the court *may* . . . order that the testimony of the child be taken in a room other than the courtroom . . . . [If the court so orders,] the court shall ensure that the child cannot see or hear the defendant." (Emphasis added.) In *State* v. *Jarzbek,* supra, 704–705, we held that videotaping the testimony of a minor victim outside the defendant's physical presence is constitutionally permissible only if the state proves by clear and convincing evidence that the defendant's physical presence would seriously call into question the minor's trustworthiness as a witness. Although *Jarzbek* did not involve a motion made pursuant to § 54-86g, we noted that "the videotaping procedure [the trial court] approved is essentially the same procedure now prescribed by § 54-86g." Id., 686 n.2.

This court should " 'try, whenever possible, to construe statutes to avoid a constitutional infirmity,' " but may not do so by rewriting the statute or by eschewing its plain language. *Seals* v. *Hickey,* 186 Conn. 337, 346, 441 A.2d 604 (1982). Our order of remand in this case reflects our view that the trial court's discretion under § 54-86g to order the taking of the victim's testimony outside the defendant's physical presence is circumscribed by the criteria established in *Jarzbek.* In applying the *Jarzbek* criteria to motions made pursuant to § 54-86g, we rewrite nothing in the language of the statute, but identify those conditions under which the trial court constitutionally may exercise its statutory discretion to grant the motion.

In the present case, the trial court, pursuant to our order of remand, conducted an evidentiary hearing to determine whether resort to the videotape procedures of § 54-86g was permissible under *Jarzbek.* Relying on the testimony of Dr. Ruth Stern, a psychologist testifying for the state, the trial court concluded that the evidence was at least clear and convincing that the

defendant's physical presence at the videotaping would seriously have called into question the minor victim's trustworthiness. The defendant, who offered no evidence at the remand hearing, concedes that the state's evidence was sufficient under *Jarzbek*. In mounting a constitutional claim against § 54-86g as written and applied, however, the defendant does not address how the statute, as applied in accordance with the *Jarzbek* standards, violates his right to confrontation. Recently, in *State* v. *Bonello*, 210 Conn. 51, 554 A.2d 277 (1989), we affirmed the *Jarzbek* standards as providing sufficient measures to protect the defendant's constitutional right to confrontation. We conclude, therefore, that § 54-86g, as written and as applied in the present case in accordance with *State* v. *Jarzbek,* supra, is not unconstitutional.

B

The heart of the defendant's first claim of error lies in the assertion that the trial court's concededly correct findings on the remand hearing cannot be used to uphold the defendant's conviction. The defendant maintains that a decision on appeal should have been made on the record as it stood prior to the remand hearing, and that the state should not have had the opportunity retroactively to create a record establishing the need to use the videotape procedure. Consequently, he claims that he should be given a new trial.

Contrary to the defendant's assertions, there did exist a "record" at trial supporting the trial court's decision to allow the state's motion. Although no evidentiary hearing on the state's motion had been conducted prior to the defendant's trial, the trial court indicated on the record that it had granted the state's motion on the grounds of the victim's age, her relationship with her father, the court's experience with other child witnesses and the court's "common sense." We

agree with the defendant that there was no "record" in the sense of an evidentiary record required by *Jarzbek*. It was because of this very lack of an evidentiary record, however, that we remanded the case.

We are not persuaded that our remand order allowing the court to develop such a record through evidence presented by both parties violated the defendant's right to a fair trial. In support of his argument, the defendant relies on *Drope* v. *Missouri,* supra, and *Pate* v. *Robinson,* 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966). Neither case supports the defendant's claim. In *Drope* v. *Missouri,* supra, 181, the United States Supreme Court held that the defendant was denied due process when the trial court failed to make an adequate inquiry into his competence to stand trial. The court ruled that the defendant's due process rights would not be adequately protected by remanding the case for an evaluation of his competence to stand trial six years after the trial. The court stated: "Given the inherent difficulties of such a *nunc pro tunc* determination under the most favorable circumstances . . . we cannot conclude that such a procedure would be adequate here." Id., 183. Similarly, in *Pate* v. *Robinson,* supra, 387, the court refused to remand the case for a hearing on the accused's competence to stand trial six years after the trial. It indicated that the "need for concurrent determination" of an accused's competence to stand trial was distinguishable from the situation where "on remand the State could discharge its constitutional obligation by giving the accused a separate hearing on the voluntariness of his confession." Id., citing *Jackson* v. *Denno,* 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964).

*Drope* and *Robinson* both concerned the question whether a remand hearing to determine the defendant's competence to stand trial would adequately protect the defendant's due process rights. Neither case

purported to adopt criteria for determining the circumstances under which a new trial rather than a limited remand must be ordered. In general, the setting aside of a verdict, as distinct from a limited remand, is not required for due process. *State* v. *Loray,* 46 N.J. 179, 184, 215 A.2d 539 (1965). This court has on several occasions remanded a case for the limited purpose of conducting an evidentiary hearing necessary for appellate review of a claim. See, e.g., *State* v. *Badgett,* 200 Conn. 412, 433–34, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986) (remanding case for factual hearing to determine whether illegally discovered evidence admissible under recently articulated "inevitable discovery" rule); *State* v. *Pollitt,* 199 Conn. 399, 415–16, 508 A.2d 1 (1986) (remanding case for factual hearing to determine whether state suppressed exculpatory evidence); cf. *State* v. *Garrison,* 199 Conn. 383, 388–89, 507 A.2d 467 (1986) (where court unable to determine from record whether state established defendant's guilt beyond reasonable doubt, court ordered remand for further articulation of trial court's grounds for rejecting defendant's defenses).

In the present case, the trial was held in April and May, 1986. The remand hearing was conducted in February and April, 1988. The two year interval between the trial and the remand hearing does not approach the six year hiatus involved in the *Drope* and *Robinson* cases. Moreover, the defendant does not identify any prejudice to his right to a fair trial arising from the lack of a concurrent determination of the state's need to videotape the victim's testimony outside the defendant's presence. We are not inclined to presume such prejudice where the defendant had the opportunity at the remand hearing to challenge the need for the videotaping procedure, and where the defendant has not asserted that evidence concerning the minor victim's psychological orientation toward her alleged

abuser at the time of the trial, presented two years after the trial, was unreliable or likely to lead to distortions in the trial court's factual determinations on remand. Cf. *Drope* v. *Missouri*, supra, 183. Consequently, we conclude that the defendant's due process rights were not violated by this court's order of remand requiring the trial court to establish an evidentiary record pertaining to the state's motion to videotape the minor victim's testimony pursuant to General Statutes § 54-86g.

## II

The defendant's second claim is that the trial court violated the provisions of Practice Book § 624[5] and the defendant's constitutional rights to notice of the charges against him when it permitted the state, on April 29, 1986, to file a substitute information adding a second count of risk of injury to a minor after the minor victim's videotaped testimony had been taken. The defendant concedes that no objection was raised to the additional count, but argues that this claim is reviewable under *State* v. *Evans*, supra, because it impinges on his fundamental constitutional right to notice of the charges against him.

The record discloses that on April 21, 1986, the state filed an information charging the defendant with one count each of second degree sexual assault, third degree sexual assault, and risk of injury to a minor. The risk of injury count alleged that "on divers days between June, 1979, and January, 1984, the said Rex Snook wilfully and unlawfully did acts likely to impair the health and morals of [the victim], a child under the age of sixteen years . . . . " In the substitute information dated

---

[5] Practice Book § 624 provides: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information or indictment at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant."

April 29, 1986, the state amended the original risk of injury count by alleging that "on divers days between June, 1979, and January 18, 1983, and between January 20, 1983, and January 11, 1984," the defendant committed acts in violation of § 53-21. An additional risk of injury count alleged that "on or about January 19, 1983, the said Rex Snook wilfully and unlawfully did acts likely to impair the health and morals of [the victim], a child under the age of sixteen years . . . . " The record also discloses that the victim's videotaped testimony was taken on April 29, 1986, in accordance with the trial court order, the same day the defendant was charged with the additional risk of injury count in the substitute information.

Where a criminal defendant has failed in the trial court to preserve a claim of error for appellate review, review under *State* v. *Evans,* supra, is appropriate " 'where the record adequately supports a claim that the defendant has been deprived of a fundamental constitutional right and a fair trial.' " *State* v. *Bailey,* 209 Conn. 322, 329, 551 A.2d 1206 (1988). "It is the responsibility of the appellant to provide an adequate record for review." Practice Book § 4061.

The defendant's second claim of error must fail. Although the record discloses that the taking of the videotaped testimony and the filing of the substitute information occurred on the same day, the record does not disclose which event occurred first. As a predicate to prevailing on this claim, the defendant bore the burden of demonstrating, on the record, that the substitute information was filed after the victim's videotaped testimony was taken. The only relevant information is found in the trial court's comments during a pretrial hearing on May 5, 1986, in which the court stated: "On Monday the 28th—I'm sorry—Tuesday the 29th the State filed the long form Information consisting of four counts, two of which are risk of injury, and on late Tues-

day morning, the 29th of April . . . the Court and the victim had the victim's testimony videotaped pursuant to the statute . . . . " Moreover, the record discloses that the defendant did not object to the additional risk of injury count in the substitute information. On May 5, 1986, the defendant entered a plea of not guilty to the substitute information without raising an objection concerning the timeliness of the added risk of injury count. Nor has the defendant sought to clarify the trial court record subsequent to appeal. See, e.g., Practice Book § 4051 (motion to rectify trial court record). Thus, the defendant has failed to avail himself of available procedural devices that would furnish a basis for considering this claim. As a consequence, the defendant has not met his burden of providing us with an adequate record to review his claim. In its present state, the record does not adequately support the defendant's claimed deprivation of a fundamental constitutional right. *State* v. *Evans,* supra.[6]

## III

The defendant next claims that the evidence was insufficient to establish beyond a reasonable doubt that he violated General Statutes § 53-21 as charged in the third count of the substitute information. As noted above, the third count of the substitute information charged that the defendant, "on or about January 19, 1983," had committed acts likely to impair the health and morals of the victim. The record discloses that January 19, 1983, was the victim's fifth birthday. The defendant maintains that, in charging him with committing the crime on the date of January 19, 1983, the state bore the burden of proving beyond a reasonable

---

[6] Because of our disposition of this issue, we need not address the defendant's assertion that the taking of a minor victim's testimony pursuant to General Statutes § 54-86g, prior to the commencement of jury selection, constitutes the "commencement of trial" for the purposes of Practice Book § 624.

doubt that the acts in question occurred on that date. He claims that the evidence failed to show that he had committed any such acts on that specific date. We disagree.

The evidence presented by the state was substantially as follows. The victim's mother testifed that on January 10, 1984, prior to the victim's sixth birthday, the victim disclosed to her certain incidents involving the defendant. On direct examination, the victim's mother testified: "It was on [the victim's] fifth birthday and I had bought some presents for her down at a local store near the house. I left her with Rex and I went down to pick up the birthday present that they had wrapped for me. She told me while I was gone that Rex had taken her into her bedroom closet and that he had done bad things with her in the closet and she said that he heard my car door slam and then they came out of the closet and Rex went to work."

In the victim's videotaped testimony, she testified that she remembered an incident that happened inside the house. She testified that "it was my birthday and my mother, my mother . . . went to go shopping for my birthday presents and Rex was there with me and then after when mommy left he took me into my closet. . . . He pulled down his pants then pulled down my pants and then he like rubbed my vagina. . . . He made me rub it and then he sat down or laid down. He sat down and then he made me sit on his, you know, penis." In addition, the state presented the testimony of a social worker, Lucille Brown, who spoke with the victim on January 18, 1984. She testified that the victim related to her an incident in which the defendant while in the house had removed the victim's panties but had pulled them back up when he heard a car door slam. In addition, Brown testified that "I asked her about what time this happened and she said it was around her birthday time." On cross-examination,

Brown was asked, "Now, what birthday did you believe she was referring to?" She answered, "Her last birthday."

" ' "When a verdict is challenged because of insufficient evidence, the issue is whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Benton,* 161 Conn. 404, 407, 288 A.2d 411 (1971)." *State* v. *Nemeth,* 182 Conn. 403, 410, 438 A.2d 120 (1980); see *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985). "The evidence must be given a construction most favorable to sustaining the jury's verdict." *State* v. *Carter,* supra.' *State* v. *Findlay,* 198 Conn. 328, 333, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986)." *State* v. *Bailey,* supra, 349–50.

The uncontroverted testimony of the victim's mother was that the incident that took place inside the closet occurred on the victim's fifth birthday, January 19, 1983. Brown interviewed the victim on January 18, 1984, one day before the victim's sixth birthday. Thus, Brown's reference to the victim's "last birthday" referred to January 19, 1983, the date alleged in the substitute information. In addition, the testimony of the victim herself indicated that the incident in the closet occurred on her birthday. Construing this evidence most favorably to sustaining the jury's verdict, we conclude that the jury could reasonably have concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative weight of the evidence established beyond a reasonable doubt that the defendant committed acts likely to impair the health and morals of the minor victim on January 19, 1983. *State* v. *Bailey,* supra.

## IV

The defendant next claims that his state and federal constitutional guarantees against double jeopardy were violated by (A) his convictions and subsequent consecutive sentences for the two counts of risk of injury to a minor, and (B) his convictions and subsequent consecutive sentences for the counts charging him with sexual assault in the second degree and sexual assault in the third degree. We are not persuaded.

## A

As noted above, the state, in a substitute information, charged the defendant with two counts of violating General Statutes § 53-21. Count two alleged that between June, 1979, and January 18, 1983, and between January 20, 1983 and January 11, 1984, the defendant committed acts likely to impair the health and morals of the victim in violation of § 53-21. Count three alleged that on January 19, 1983, the defendant also committed acts against the victim in violation of § 53-21. After the jury convicted the defendant of both counts, but prior to sentencing by the court, the defendant filed a motion for judgment of acquittal as to count three, claiming that a conviction on both counts two and three violated his state and federal constitutional protections against double jeopardy. The trial court denied the motion, and sentenced the defendant to a term of five to ten years imprisonment for his conviction on count two and a term of ten years for his conviction on count three. The two terms were to be served consecutively. The defendant concedes that the separate counts concerned allegations of separate criminal acts, but contends that count two alleged a continuing course of conduct that the state could not parse into separate crimes by the addition of count three alleging an act of the same character occurring on a separate and specific date.

Double jeopardy "prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense. *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *State* v. *Devino,* 195 Conn. 70, 73, 485 A.2d 1302 (1985); *State* v. *Frazier,* 194 Conn. 233, 237–38, 478 A.2d 1013 (1984)." *State* v. *Thompson,* 197 Conn. 67, 72, 495 A.2d 1054 (1985). "Before the double jeopardy prohibition is triggered, however, it must appear . . . that the crimes arose out of the same act or transaction . . . . " *State* v. *Amaral,* 179 Conn. 239, 242, 425 A.2d 1293 (1979). "If a violation of law is not continuous in its nature, separate indictments may be maintained for each violation. Thus, a distinct repetition of a prohibited act constitutes a second offense and subjects the offender to an additional penalty." 21 Am. Jur. 2d, Criminal Law § 267.

In the present case, the separate counts alleging risk of injury to a minor arose out of separate acts. The substitute information makes clear that the defendant was charged with violating § 53-21 as a result of at least two separate transactions: any acts occurring between June, 1979, through January 11, 1984, excepting January 19, 1983; and acts occurring on January 19, 1983. We disagree with the defendant that count two alleged "a violation of law continuous in nature," such that a separate count alleging a violation of § 53-21 on a specific date was impermissible. The failure of the state to obtain more specific information as to the date or dates of the acts alleged in count two did not render the defendant's criminal conduct "a violation of law continuous in nature." Section 53-21 as charged does not proscribe a continuing course of criminal conduct but proscribes "acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being." *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963). "This court's opinions pursuant to

§ 53-21 make it clear that an act injurious to the physical well-being of a child is prohibited." *State* v. *Eason,* 192 Conn. 37, 47, 470 A.2d 688 (1984). As we stated in an analogous context, "each separate act of forcible sexual intercourse constitutes a separate crime. . . . A different view would allow a person who has committed one sexual assault upon a victim to commit with impunity many other such acts during the same encounter." *State* v. *Frazier,* 185 Conn. 211, 229, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982); see also *State* v. *Giannotti,* 7 Conn. App. 701, 709, 510 A.2d 451, cert. denied, 201 Conn. 804, 513 A.2d 700 (1986) (each individual act or attempted act of forcible sexual intercourse constitutes separate crime; therefore, double jeopardy no bar to prosecution for separate acts of forcible sexual intercourse). If we adopted the defendant's reasoning, the commission of one act likely to impair the health and morals of a minor would insulate the perpetrator from further criminal liability for any additional acts of the same character perpetrated on the same minor in subsequent encounters. Such a result defies rationality.

A distinct repetition of an act prohibited by § 53-21 constitutes a second offense. Cf. *State* v. *Eason,* supra. In the present case, the acts alleged and proven to have occurred on January 19, 1983, constituted an offense distinct from the crime alleged in count two. Cf. *State* v. *Thompson,* supra, 72–73 (because the sale of cocaine on separate dates five days apart was not one transaction, state properly charged defendant with separate offenses). Consequently, double jeopardy did not bar the trial court from rendering a judgment of conviction on counts two and three of the substitute information and imposing consecutive sentences thereon. *State* v. *Amaral,* supra.

## B

The defendant also claims that his conviction and subsequent consecutive sentencing for the crimes of sexual assault in the second degree and sexual assault in the third degree violated his state and federal rights against double jeopardy. The defendant concedes that this issue was not raised at trial, but maintains that we should review this claim under *State* v. *Evans,* supra. The state, on the other hand, argues that the defendant has "waived" the claim of double jeopardy, and relies on *State* v. *Price,* 208 Conn. 387, 544 A.2d 184 (1988), and *State* v. *Jones,* 166 Conn. 620, 353 A.2d 764 (1974).

In *State* v. *Price,* supra, 390, we stated: "Whether a defendant may raise a defense of double jeopardy on appeal, when that issue was not raised at trial, is a question that this court addressed, and resolved against the defendant, in *State* v. *Jones,* [supra]. There, as in this case, the defendant 'proceeded to trial, verdict and judgment without raising [a double jeopardy] claim.' Id., 630. We held that 'in so doing he impliedly waived the defense of double jeopardy, and, therefore, that issue [was] not before us for determination on the merits.' Id."

The state's reliance on *Jones* and *Price* is misplaced. Those cases did not involve a claim of double jeopardy based on multiple punishments for convictions obtained at a single trial. In *State* v. *Devino,* supra, 73, however, the defendant claimed for the first time on appeal that his conviction for both the possession and sale of cocaine violated the double jeopardy prohibition against multiple punishments for the same offense. We stated: "Since this claim involves a question of a fundamental constitutional right, it is reviewable under *State* v. *Evans,* [supra]; see *State* v. *Amaral,* [supra, 242]; *State*

v. *Goldson,* 178 Conn. 422, 423, 423 A.2d 114 (1979)."
Id. Both decisions cited in *Devino* also involved claims
pertaining to the double jeopardy prohibition against
multiple punishments. See *State* v. *Amaral,* supra, 242
(claim of multiplicity arising from trial court's treat-
ment of heroin charges as separate crimes); *State* v.
*Goldson,* supra (transportation lesser included offense
of crime of possession of heroin). Because the defend-
ant's claim falls within the *Devino* line of cases, review
of this unpreserved claim under *State* v. *Evans* is appro-
priate.

" ' "Double jeopardy analysis in the context of a sin-
gle trial is a two-step process. First, the charges must
arise out of the same act or transaction. Second, it must
be determined whether the charged crimes are the
same offense. Multiple punishments are forbidden only
if both conditions are met." ' " *State* v. *Palmer,* 206
Conn. 40, 52, 536 A.2d 936 (1988). " '[W]here the same
act or transaction constitutes a violation of two distinct
statutory provisions, the test to be applied to determine
whether there are two offenses or only one, is whether
each provision requires proof of a fact which the other
does not.' *Blockburger* v. *United States,* 284 U.S. 299,
304, 52 S. Ct. 180, 76 L. Ed. 306 (1932) . . . . " *State*
v. *Palmer,* supra. The defendant on appeal bears the
burden of proving that the prosecutions are for the
same offense in law and fact. *United States* v. *Papa,*
533 F.2d 815, 820 (2d Cir.), cert. denied, 429 U.S. 961,
97 S. Ct. 387, 50 L. Ed. 2d 329 (1976); see also *United
States* v. *Crumpler,* 636 F. Sup. 396, 398 (N.D. Ind.
1986) (defendant bears burden of proof on double jeop-
ardy claim); *United States* v. *Price,* 533 F. Sup. 1183,
1187 (W.D.N.Y. 1982) (ordinarily, defendant shoulders
burden of showing that offenses are the same); cf.
*United States* v. *Kamins,* 479 F. Sup. 1374, 1378 (W.D.
Pa. 1979) (in conspiracy cases, once defendant estab-
lishes prima facie, nonfrivolous claim that offenses the
same, burden of persuasion shifts to state).

The defendant does not even address the first issue whether the second and third degree sexual assault charges arose out of the same transaction. As the facts recited above make clear, the state introduced evidence of a number of episodes in which the defendant engaged in sexual intercourse with the victim. Both counts one and four alleged that the defendant committed the prohibited act or acts on "divers days between June, 1979, and January, 1984." The state points out that the jury could have relied on evidence of one act to convict the defendant of count one, and evidence of a different act to convict him of count four. Thus, the defendant has failed to meet his initial burden of demonstrating that his conviction on the second and third degree sexual assault charges arose out of the same act. *United States* v. *Papa,* supra.

Even if we assume that the convictions on both counts arose out of the same act, the defendant concedes that there are "elemental distinctions" between the offenses of second and third degree sexual assault as charged. Under count one, alleging second degree sexual assault in violation of General Statutes § 53a-71 (a) (4), the state was required to prove the defendant engaged in sexual intercourse with the victim, that the victim was less than eighteen years of age and that the defendant was the victim's guardian or was otherwise responsible for the general supervision of her welfare. Under count four, alleging third degree sexual assault in violation of General Statutes § 53a-72a (a) (2), the state was required to prove sexual intercourse with the victim whom the defendant knew to be related to him within the degrees of kindred specified in § 46b-21. We disagree with the defendant that these "elemental distinctions" do not result in the creation of distinct offenses. The state could have proven all the elements of § 53a-71 (a) (4) and not convicted the defendant of § 53a-72a (a) (2) if it had failed to prove that he knew

that he was related to the victim within the degrees of kindred specified in § 46b-21. Similarly, the state could have proven all the elements of § 53a-72a (a) (2) and not convicted the defendant of § 53a-71 (a) (4) if it had failed to prove, for example, that the victim was less than eighteen years of age. See *State* v. *Silver,* 139 Conn. 234, 244, 93 A.2d 154 (1952). Thus, it is quite clear that each charge required proof of facts that the other did not. Consequently, the consecutive sentences imposed on the defendant for his convictions for second and third degree sexual assault as charged do not violate double jeopardy. *State* v. *Palmer,* supra.

V

The defendant next claims that the trial court erred in denying his motion for judgment of acquittal on count one of the substitute information charging him with violating General Statutes § 53a-71 (a) (4). The defendant argues that charging him with violating subsection (a) (4) was incorrect since the defendant, as the natural parent of the victim, does not fall within the restrictive class of persons in that subsection. The defendant relies primarily on the dissenting opinion in *State* v. *Burney,* 189 Conn. 321, 330, 455 A.2d 1335 (1983) (*Shea, J.,* dissenting).

In *State* v. *Burney,* supra, 324, we held that the trial court erred in failing to grant the defendant's motion for judgment of acquittal for the count alleging a violation of § 53a-71 (a) (4), then appearing as subsection (a) (3), because the state had failed to prove beyond a reasonable doubt that the defendant was responsible for the general supervision of the complainant's welfare. We found that the statutory phrases "responsible for" and "general supervision" were ambiguous, and concluded that the degree of responsibility and supervision that the state was required to prove were greater than the facts in that case. Id., 328. Although

there was evidence that the defendant might have been the complainant's natural father; id., 323–24; our holding did not even remotely address the question whether a natural parent did not fall within the provisions of subsection (a) (4). The dissent in *Burney* disagreed with the interpretation given the statute by the majority, and would have upheld the defendant's conviction, despite the fact that there was evidence that the defendant was the complainant's natural father. Id., 331–32. The present defendant, nevertheless, emphasizes the dissent's observation that subsection (a) (4) was derived from § 213.3 (b) of the Model Penal Code of the American Law Institute. Id., 330. In a footnote, the dissent cited comment 3 to the Model Penal Code provision, which states, in relevant part: " 'Of course, intercourse with a natural or adopted child constitutes incest under Section 230.2 of the Model Code.' " Id., 330 n.2.

"Where the language of the statute is clear and unambiguous, we have refused to speculate as to the legislative intention, because it is assumed that the words express the intention of the legislature." *Sutton* v. *Lopes,* 201 Conn. 115, 118, 513 A.2d 139, cert. denied sub nom. *McCarthy* v. *Lopes,* 479 U.S. 964, 107 S. Ct. 466, 93 L. Ed. 2d 410 (1986). "Moreover, courts should not imply exceptions to a statute which the legislature did not prescribe by word or implication." *Caulkins* v. *Petrillo,* 200 Conn. 713, 719, 513 A.2d 43 (1986). Unlike the court in *Burney,* we are not faced with an ambiguity in the statute as applied to the facts of this case. We perceive nothing in the language of the statute, which provides that the actor must be "such [victim's] guardian or otherwise responsible for the general supervision of such [victim's] welfare," that suggests that natural parents were intended to be excluded from the class of persons subject to liability. Indeed, it is manifest that this language includes natural parents, as long

as such parents are "guardians" or have maintained the requisite level of responsibility for the child's general supervision under *Burney*. Further, even if we were persuaded that the language of § 53a-71 (a) (4) was ambiguous, the language cited above from the Model Penal Code comments would not alter our opinion. The comment simply notes that "intercourse with a natural or adopted child constitutes incest . . . . " The comment does not, however, indicate whether the drafters of the Model Penal Code intended to exclude natural parents from prosecution under § 213.3 (b). Consequently, we conclude that the defendant, as the natural parent of the victim, was subject to prosecution under General Statutes § 53a-71 (a) (4). Therefore, the trial court did not err in denying the defendant's motion for judgment of acquittal on count one.

## VI

The defendant next claims that the trial court erroneously instructed the jury to consider both statutory alternatives of the crime of risk of injury to a minor, and that its subsequent instructions informing the jury to consider only the alternative charged came only after the jury had deliberated for a lengthy period of time and, therefore, did not cure the error. Consequently, the defendant claims that it was reasonably possible that the jury, in convicting him, erroneously considered a statutory alternative of risk of injury with which he had not been charged. See *State* v. *Newton*, 8 Conn. App. 528, 537–38, 513 A.2d 1261 (1986) (trial court erroneously enlarged crime of risk of injury to minor by instructing jury on both types of prohibited conduct where state charged the defendant with only one). The state, however, argues that this claim should not be reviewed because the defendant did not except to the trial court's final instructions, which the defendant concedes to be correct, and he has not sought review under *State* v. *Evans,* supra.

As noted above, the defendant was charged with two counts of risk of injury to a minor under General Statutes § 53-21 alleging that he "did acts likely to impair the health and morals of [the victim]." In its initial charge to the jury, however, the trial court read § 53-21 in its entirety, as follows: " 'Any person who wilfully or unlawfully causes or permits any child under the age of [sixteen] years to be placed in such a situation that his health is likely to be injured or its morals likely to be impaired or does any act likely to impair the health or morals of any such child is guilty of injury or risk of injury to or impairing the morals of such child.' "

Defense counsel interposed no exceptions to the charge on the risk of injury counts. The record discloses that the state requested the trial court to reinstruct the jury that, on the risk of injury counts, the defendant could be found guilty if the acts alleged in the information were "either likely to impair the health or likely to impair the morals" of the the victim. Apparently as the result of some confusion with the state's request, however, the trial court recalled the jury and reinstructed them as follows: "I want to point out to you I said or. It's either of those things: That he placed her in such a situation that her health was likely to be impaired or her morals likely to be impaired or that he did any act likely to impair the health or morals of [the victim]."

The jury resumed deliberations immediately after this portion of the court's reinstructions. At that point, the trial court requested further exceptions. Defense counsel stated: "Just the one pointed out by [the prosecutor] that, in fact, the Information was specific and that [the defendant] wasn't charged with placing [the victim] in a position where her health or morals would be injured but rather committing acts, and your Honor did mention placing her in the position where her health and morals might be affected." Thereafter, the trial

court again recalled the jury, and instructed them as follows: "I'm going to read to you what is the correct portions of the statute as alleged by the state . . . and I ask you to disregard my charging you on risk of injury . . . with respect to this element of placing. That's not an element for you to consider. The statute as it applies in counts two and three reads as follows: Any person who does any act likely to impair the health or morals of any child under the age of 16 years is guilty of injury or risk of injury to or impairing the morals of such child."

In claiming that the corrective instructions came only after the jury had deliberated at length under specific but erroneous instructions, the defendant acknowledges his failure to except to the revised charge at a time when an exception should have been taken. "An exception serves the important function of alerting the trial court to error while there is time to correct it without ordering a retrial." *State* v. *Jones,* 193 Conn. 70, 88, 475 A.2d 1087 (1984); see *State* v. *Dahlgren,* 200 Conn. 586, 594–95, 512 A.2d 906 (1986). In the present case, "[t]he exception taken to the charge was not sufficient to alert the trial court to any alleged error while there was still time to correct it without ordering a retrial." *State* v. *Dahlgren,* supra.

" 'The failure of the defendant to state distinctly the matter being objected to immediately after the conclusion of the charge ordinarily renders the claim of error unreviewable on appeal. See Practice Book §§ 854, [4185]. In the absence of a specific timely exception, a claim of error is "reviewable as an exceptional circumstance within the doctrine of *State* v. *Evans,* [supra], only when the defendant can demonstrate that he has clearly been deprived of a fundamental constitutional right and a fair trial . . . ." ' " *State* v. *Utz,* 201 Conn. 190, 208, 513 A.2d 1191 (1986). Because the defendant's claim facially implicates a constitutional

right; see *State* v. *Ruiz,* 171 Conn. 264, 269, 368 A.2d 222 (1976) (elementary to criminal law that accused is required to defend only against alleged charges); we must undertake a limited review of the record to determine whether it adequately supports the defendant's claim. *State* v. *Newton,* supra, 533–34.

Our review of the record convinces us that the defendant has not been deprived of a fundamental constitutional right and a fair trial. In a criminal case, an error in jury instructions that is of constitutional dimensions requires reversal only if, when the charge is read as a whole, it is reasonably possible that the jury was misled. *State* v. *Bailey,* supra, 338. "[W]e consider the supplemental charge together with the allegedly erroneous original comment in determining prejudicial impact . . . . " *State* v. *Cavros,* 196 Conn. 519, 528, 494 A.2d 550, cert. denied, 474 U.S. 904, 106 S. Ct. 233, 88 L. Ed. 2d 232 (1985). The record indicates that the trial court recalled the jury from its deliberations and expressly ordered the jurors to disregard that aspect of General Statutes § 53-21 relating to placing the victim in a situation where her health or morals may be injured or impaired. "[A]bsent a fair indication to the contrary, we presume that these instructions were followed." Id. In light of the trial court's final curative instructions expressly removing from the jury's consideration a statutory basis of liability for which the defendant was not charged, we conclude that it was not reasonably possible for the jury to have been misled. *State* v. *Bailey,* supra.

## VII

Finally, the defendant claims that it was reasonably possible that the trial court's instructions misled the jury to believe that the defendant could be convicted on count one, alleging sexual assault in the second degree, and count four, alleging sexual assault in the

third degree, both of which require proof of sexual intercourse, by proof of "sexual contact" alone. See General Statutes §§ 53a-71 (a) (4) and 53a-72a (a) (2). We are not persuaded.

On count one, the trial court instructed the jury substantially as follows: "That statute reads, 'A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person . . . .' Obviously, the State has to prove the elements of that statute are that the defendant engaged in sexual intercourse with another person . . . ." The court thereafter stated: "Assault, as we use it in the criminal law and in this Statute, is the intentional or unauthorized touching of or contact with another person. . . . A sexual assault, therefore, is the intentional, unauthorized touching or contact with the intimate parts of another person. Another element of that statute is the phrase sexual intercourse." Thereafter, the trial court defined the term "sexual intercourse." On count four, the trial court instructed the jury: "The fourth count is . . . sexual assault in the third degree in which the State alleges that . . . the Defendant, Rex Snook, did engage in sexual intercourse with [the victim] . . . . I'm not going to redefine the words or phrases of sexual intercourse with you because I have done that . . . . Briefly, I want to turn to one other definition that I think you should keep in mind . . . . I mentioned to you earlier when I was defining sexual assault in the second degree . . . I was defining to you as you recall an assault as being the intentional or unauthorized touching of or contact with another person and I told you the severity of that touching is not important as long as it is intentional and I told you that a sexual assault is, therefore, the intentional, unauthorized touching or contact with the intimate parts of another person."

Immediately after the charge was given, defense counsel excepted to the instructions on counts one and four, claiming that the trial court's reference to "sexual contact" was misleading. The court recalled the jury and reinstructed them as follows: "With respect to the charge of sexual assault in the second degree . . . a person is guilty of sexual assault in the second degree when such person engages in sexual intercourse . . . that's one of the elements that the State has to prove . . . . [W]ith respect to sexual assault second degree you would have to find beyond a reasonable doubt, of course, that [the defendant] engaged in sexual intercourse with [the victim] . . . . " Although the trial court made no reference to its previous instructions on sexual assault in the third degree, the defendant did not except to this omission. Subsequently, the trial court, recalling the jury once again in response to a jury question pertaining to another matter, stated: "With respect to the first and fourth counts, the first count is sexual assault in the second degree and I have explained to you what that means and it includes the allegation of sexual intercourse. The fourth count is sexual assault third degree and that includes an allegation or definition of sexual intercourse but if you believe, based on the testimony beyond a reasonable doubt that the State has proven that an act of sexual intercourse occurred, then that would be sufficient to apply to those counts."

The defendant asserts that the trial court's original charge could have misled the jury to believe that the defendant could be found guilty on both counts one and four on the basis of a finding of "sexual contact" alone, even though both crimes required proof beyond a reasonable doubt of sexual intercourse. He further maintains that the trial court's subsequent instructions did not cure this error. The state argues, on the other hand, (1) that this claim is unreviewable because the defend-

ant did not except to the supplemental charge, which he now claims did not cure the original error, and does not seek review under *State* v. *Evans,* supra, and (2) that even if his claim is reviewed, the jury instructions, when read as a whole, could not reasonably have misled the jury to believe that the defendant could be found guilty on counts one and four without a finding of sexual intercourse.

We disagree with the state's argument that the defendant's claim is unreviewable. Although the defendant failed to take an exception after the trial court had delivered its supplemental instructions, the defendant's claim that the trial court's charge permitted the jury to convict the defendant on counts one and four by proof of sexual contact rather than sexual intercourse goes to the defendant's elemental due process right not to be convicted unless " 'the state establish[es] beyond a reasonable doubt every essential fact necessary to establish the crime charged . . . .' " *State* v. *Stevenson,* 198 Conn. 560, 568, 504 A.2d 1029 (1986). The defendant's claim, therefore, facially implicates a fundamental constitutional right and the right to a fair trial. *State* v. *Evans,* supra.

We agree with the defendant that the trial court's reference to "sexual contact" in relation to both counts one and four was incorrect. The crimes charged against the defendant in both counts required proof of "sexual intercourse." The trial court's definition of "sexual assault" as the "intentional or unauthorized touching of or contact with the intimate parts of another person," is not an element of General Statutes §§ 53a-71 (a) (4) or 53a-72a (a) (2). The trial court's instructions on "sexual contact," therefore, were inappropriate.

This, however, does not end our inquiry. As noted above, the instructions as a whole must be reviewed

to determine whether the trial court committed reversible error. An error of constitutional dimension requires reversal only if it is reasonably possible that the jury was misled. *State* v. *Bailey,* supra. Regarding the trial court's instructions on count one, alleging sexual assault in the second degree, the record indicates that it is not reasonably possible that the jury was misled by the trial court's reference to "sexual contact" to believe that it could convict the defendant without proof beyond a reasonable doubt of sexual intercourse. At the outset of its instructions, the court twice indicated that, for the defendant to be convicted, the state had to prove that the defendant engaged in "sexual intercourse." Moreover, in its supplemental charge, the court reiterated the requirement of sexual intercourse, and made no mention of "sexual contact." Finally, the court, in response to an unrelated question from the jury, reaffirmed that sexual assault in the second degree includes the element of sexual intercourse.

Further, while the court expressly instructed the jury on numerous occasions that it had to find "sexual intercourse" to convict the defendant of § 53a-71 (a) (4), it never expressly or impliedly indicated that "sexual contact" was a sufficient or alternative basis of liability. Moreover, in the specific passage of which the defendant complains, the trial court, after discussing "sexual contact," stated: "Another element of [§ 53a-71 (a) (4)] is the phrase sexual intercourse." These instructions, therefore, may have led the jury to believe that the state was required to prove both an "intentional, unauthorized touching . . . with the intimate parts of another" as well as sexual intercourse. Thus, the "sexual contact" instructions may have been favorable to the defendant. See *State* v. *Cochran,* 191 Conn. 180, 187–88, 463 A.2d 618 (1983). In light of the trial court's otherwise unambiguous instructions that the state had to prove sexual intercourse under § 53a-71 (a) (4), we

conclude that it is not reasonably possible that the court's reference to and description of "sexual contact" within its charge on sexual assault in the second degree misled the jury to believe that it could convict the defendant without proof of sexual intercourse beyond a reasonable doubt.

We also conclude that it was not reasonably possible that the jury could have believed it could convict the defendant on count four without finding that sexual intercourse had been proven beyond a reasonable doubt. As with its instructions on count one, the trial court prefaced its charge on count four by indicating that the state's information alleged an act of sexual intercourse. Before concluding this portion of the charge, the trial court stated: "[I]f you find the element in the fourth count which charges sexual assault in the third degree beyond a reasonable doubt, that Rex Snook did engage in sexual intercourse with [the victim] . . . then you would find him guilty of that crime beyond a reasonable doubt." Immediately after these instructions, the court, as it did during its charge on count one, defined "sexual assault" as the "intentional, unauthorized touching or contact with the intimate parts of another person." Again, however, aside from reading that definition, the court did not instruct the jury that "sexual assault" as defined constituted a sufficient or alternative basis of liability. Although the trial court did not refer to count four upon reinstructing the jury the first time, the court, responding to the jury's request for further elaboration on an unrelated matter, stated that "sexual assault third degree . . . includes an allegation of sexual intercourse but if you believe, based on the testimony beyond a reasonable doubt that the state has proven that an act of sexual intercourse occurred, then that would be sufficient to apply to [both counts one and four]." Although it is arguable that the trial court's instructions might have

been clearer, we are not persuaded, in light of the instructions as a whole, that the jury could have been misled to believe that it could convict the defendant on count four without finding that the state had proven sexual intercourse beyond a reasonable doubt.

There is no error.

In this opinion the other justices concurred.