81 P.3d 1151

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Simeon RABAGO, Defendant–Appellant.**

No. 25378.

Supreme Court of Hawai'i.

Dec. 26, 2003.

Simone C. Polak, deputy prosecuting attorney, on the briefs, for the plaintiff-appellee State of Hawai'i.

Edward K. Harada, deputy public defender, on the briefs, for the defendant-appellant Simeon Rabago.

LEVINSON, ACOBA, and DUFFY, JJ., and NAKAYAMA, J. dissenting, with MOON, C.J., joins.

Opinion of the Court by LEVINSON, J.

The defendant-appellant Simeon Rabago appeals from the judgment of the second circuit court, the Honorable Shackley F. Raffetto presiding, convicting him of and sentencing him for two counts of continuous sexual assault of a minor under the age of fourteen years, in violation of Hawai'i Revised Statutes (HRS) § 707-733.5 (Supp. 2002)[1] (Counts I and II). On appeal, Raba-

---

1. HRS § 707-733.5 provides:

 **Continuous sexual assault of a minor under the age of fourteen years.** (1) Any person who:

 (a) Either resides in the same home with a minor under the age of fourteen years or has recurring access to the minor; and

 (b) Engages in three or more acts of sexual penetration or sexual contact with the minor over a period of time, but while the minor is under the age of fourteen years, is guilty of the offense of continuous sexual assault of a minor under the age of fourteen years.

 (2) To convict under this section, the trier of fact, if a jury, need unanimously agree only that the requisite number of acts have occurred; the jury need not agree on which acts constitute the requisite number.

 (3) No other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section, unless the other charged offense occurred outside the time frame of the offense charged under this section or the other offense is charged in the alternative. A defendant may be charged with only one count under this section unless more than one victim is involved, in which case a separate count may be charged for each victim.

 (4) Continuous sexual assault of a minor under the age of fourteen years is a class A felony.

 HRS § 707-700 (1993) defines "sexual penetration" as:

 vaginal intercourse, anal intercourse, fellatio, cunnilingus, anilingus [sic], deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital or anal opening of another person's body; it occurs upon any penetration, however slight, but emission is not required. For purposes of this chapter, each act of sexual penetration shall constitute a separate offense.

 HRS § 707-700 (1993) defines "sexual contact" as "any touching of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts."

go contends: (1) that HRS § 707–733.5 is unconstitutional, inasmuch as the statute (a) violated his right to due process, as guaranteed by the fifth and fourteenth amendments to the United States Constitution, as well as by article I, sections 5 and 14 of the Hawai'i Constitution, and (b) violated his right to a unanimous verdict, as guaranteed by article I, sections 5 and 14 of the Hawai'i Constitution; and (2) that the circuit court erred in failing to give the jury a "specific unanimity instruction," pursuant to this court's decision in *State v. Arceo*, 84 Hawai'i 1, 928 P.2d 843 (1996). We hold that HRS § 707–733.5(2) violates the rule adopted by this court in *Arceo* and its progeny. Accordingly, we vacate the circuit court's judgment of conviction and sentence and remand this matter to the circuit court for further proceedings consistent with this opinion. We also strike down HRS § 707–733.5(2) as an unconstitutional violation of a defendant's constitutional right to due process of law.

## I. BACKGROUND

### A. Introduction

On May 14, 2001, a Maui Grand Jury returned an indictment against Rabago, charging him with: two counts of continuous sexual assault of a minor under the age of fourteen years, in violation of HRS § 707–733.5 (Counts I and II), *see supra* note 1, and two counts of sexual assault in the third degree, in violation of HRS § 707–732(1)(b) (1993)[2] (Counts III and IV). Rabago's jury

trial commenced on June 24, 2002 before Judge Raffetto.

### B. Trial Testimony

For present purposes, we briefly summarize the relevant facts adduced at trial. Between August 19, 1998 and October 4, 2000, Complainants A, B, and C,[3] who were all females under the age of fourteen years, lived in a three-bedroom house in Pukalani, Maui with their mother ("Mother") and Rabago, who was Mother's boyfriend at the time. Complainant C was the daughter of Mother and Rabago.

#### 1. Complainant A's testimony

At the time of trial, Complainant A was twelve years of age. Complainant A testified that Mother, Rabago, and Complainant C shared the large bedroom in the house and that she and her sister, Complainant B, each had their own bedrooms. Complainant A disliked Rabago because she believed that he was mean to Mother. During the period of time in which they lived at the Pukalani home, Complainant A entered Rabago's bedroom on various occasions at his request; when she did so, he would lock the door after she entered the room, and they would be alone.

Rabago would then instruct Complainant A to position herself on the bed; Complainant A would do so, lying on her back, and Rabago would pull her pants and underwear down to her ankles as he kneeled halfway on the bed. Rabago would then place his mouth on Complainant A's vulva,[4] stick his tongue out

**2.** HRS § 707–732 provides in relevant part:
**Sexual assault in the third degree.** (1) A person commits the offense of sexual assault in the third degree if:
....
(b) The person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person[.]
....
(2) Sexual assault in the third degree is a class C felony.
In 2001, the legislature amended HRS § 707–732, effective June 30, 2003, in respects not material to this appeal. *See* 2001 2d Sp. Haw. Sess. L. Act 1, §§ 2, and 7 at 941–43. In 2002, the legislature again amended HRS § 707–732, effective July 1, 2002, in respects also not material to this appeal. *See* 2002 Haw. Sess. L. Act 36, §§ 2 and 6 at 107–08.

**3.** Rabago's indictment is based on allegations of sexual assault committed against three minor complainants, whom we will refer to, in the interest of privacy, as "Complainant A," "Complainant B," and "Complainant C." Similarly, we refer to the complainants' mother as "Mother," and the father of Complainants A and B as "Father."

**4.** Complainants A and B, as well as Rabago, the prosecution, and the circuit court, employed the term "vagina," or a euphemism for "vagina" (*i.e.*, "private part" or "tuna"), to describe the areas on the complainants' bodies that Rabago allegedly touched. The appropriate term is "vulva." *See State v. Mueller*, 102 Hawai'i 391, 393 n. 3, 76 P.3d 943, 945 n. 3 (2003). In *Mueller*, we noted that
[b]oth parties, as well as the circuit court, refer to the area subject to [the defendant's] assault

onto her vulva, and make "circles" with his tongue on her vulva. Rabago also touched her vulva with the open palm of his hand, rubbing it "in circles." Complainant A testified that Rabago's actions hurt her and that she did not like what he did. Rabago's touching lasted five minutes or less on each occasion; afterwards, he would instruct her not to tell anyone and would threaten to take Complainant C away if Complainant A disobeyed him. Complainant A also testified that she observed Rabago direct Complainant B into the same bedroom and close the door on multiple occasions; during such occasions, he would instruct Complainant A to remain in the living room.

Complainant A never made any written record of any of the foregoing incidents. She recalled that each of the aforementioned events occurred in the same manner and at the same time of day (*i.e.*, in the afternoon, after school). She also generally remembered wearing a shirt and shorts during the incidents, although she could not recall precisely what she was wearing. Although Complainant A could not remember exactly how many times Rabago had placed his hand on her vulva, she estimated that he had done so less than five times; moreover, despite her initial testimony that she did not recall how many times Rabago had placed his mouth and tongue on her vulva, Complainant A later estimated that he had done so on five or more occasions. Complainant A could not

recall in what month or year any of the alleged incidents had occurred, although she did generally understand how to use a calendar and could conceptualize relative dates, such as the days of the week, months of the year, and significant holidays.[5] Furthermore, Complainant A could not recall the last time that Rabago had placed his mouth on her vulva, although she was certain that the events had transpired in the Pukalani house.

During Complainant A's testimony, and over defense counsel's objection, the circuit court asked her questions submitted in writing by members of the jury. In response to the jury's inquiry as to the whereabouts of her mother and her "other sister"[6] during the occasions when Complainant A was with Rabago in the bedroom, Complainant A stated that Mother had been "somewhere else" and that Complainant C had either been with Mother or with Complainant B in the living room. The circuit court also asked Complainant A, at the jury's request, whether her pants or underwear had been around both of her ankles when Rabago had touched her; Complainant A responded in the affirmative. Lastly, the circuit court instructed Complainant A to respond to the jury's query, "If you knew what your step-dad was doing to [Complainant C] was wrong, why did you let him touch you the same way?" Complainant A conceded that she did not know.

Complainant A testified that she had told Mother about Rabago's acts after Mother

---

as being the complainant's vagina. "Vagina" is defined as "[a] musculomembranous tube that forms the passageway between the cervix uteri and the vulva." *Taber's Cylcopedic Medical Dictionary* 2055 (18th ed.1997). By this definition, therefore, the parties' and the circuit court's usage of "vagina" as the area subject to [the defendant's] sexual assault is technically incorrect. The proper term for the area subject to [the defendant's assault] is the "vulva," which is defined as "[t]hat portion of the female *external genitalia* lying posterior to the mons veneris, consisting of the labia majora, labia minora, clitoris, vestibule of the vagina, vaginal opening, and bulbs of the vestibule." *Id.* at 2100 (emphasis added). Hereinafter, therefore, except when quoting the parties and the circuit court, in the interest of technical accuracy and to effectuate the manifest intent both of the parties and the circuit court, we shall use the term "vulva" in place of "vagina."

*Id.* (Emphasis in original.) Adhering to our observations in *Mueller*, therefore, we shall hereinafter employ the term "vulva" in place of "vagina" or any of its euphemisms.

5. Complainant A could not recall whether Rabago had touched her with his hand in either 1996 or 1997; although she initially stated that she could recall him touching her with his hand in 1998, she could not recall with certainty in what month he had first touched her. She also could not recall when he had touched her during the periods of January through December 1999 and January through December 2000. With regard to Rabago's touching Complainant A's vulva with his mouth, Complainant A could neither remember the first occasion on which the touching had occurred nor the specific dates on which the touchings had occurred in 1998, 1999, and 2000.

6. Although the question was not specific as to which sister, Complainant A responded by explaining the whereabouts of both of her sisters.

had asked her whether Rabago had ever done anything either to Complainant A or Complainant B; Complainant A had not told anyone, including her father ("Father"), about what Rabago had done prior to responding to Mother because she had been afraid that Rabago would take Complainant C away, as he had threatened. Complainant A did not recall any argument between Rabago and Mother on the day she related to Mother what Rabago had done to her; furthermore, Complainant A testified that neither she nor Complainant B had scratched Rabago's car on that day. Complainant A did remember that Mother had picked her up after school and had driven her to the Foodland supermarket to buy some groceries. Complainant A stated that, while in the car at the Foodland parking lot, she, Complainant B, and Mother had discussed what Rabago had done.

### 2. *Complainant B's testimony*

At the time of trial, Complainant B was nine years of age. She testified that she currently resided with Father, her stepmother, Complainant A, and her two stepsisters. Complainant B recalled living in a three-bedroom house in Pukalani with Mother, Rabago, Complainant A, and Complainant C. She stated that Rabago would occasionally direct her to enter his bedroom by telling her, "You going to bed." Rabago would shut the door after she had entered, and the two of them would then be alone. Rabago would instruct Complainant B to lie on the bed face-up, which she would do. Rabago would remove her clothes, pulling her pants down to her knees and then spreading her legs apart, touching and massaging her vulva with his hands. He would also touch her vulva with his mouth and tongue. Complainant B stated that Rabago's acts made her feel "sore." When Rabago would finish touching Complainant B, he would direct her to "go out and get [Complainant A] and don't tell anyone." Complainant B testified that she would sometimes see Rabago take Complainant A into the bedroom and close the door, telling Complainant B to "go play outside."

Complainant B stated that Rabago had touched her vulva with his hand "ten or more" times and had touched her vulva with his mouth the "same" number of times. She admitted, however, that, prior to trial on May 11, 2001, she had testified that Rabago had touched her vulva with his hand only "five times" and with his mouth only "five times." Complainant B explained that her testimony regarding the number of times Rabago had touched her with his hand and mouth was only an estimate. Similar to Complainant A, Complainant B possessed an understanding of the concepts of the days of the week, months of the year, and the years 1996 through 2000. Nevertheless, she could not identify any particular time in 1998, 1999, or 2000 when Rabago had touched her vulva with his hand or mouth.

Over defense counsel's objection, the circuit court asked Complainant B several questions that had been submitted in writing by members of the jury.

THE COURT: What time of day did [Rabago] touch you or do these things?

THE WITNESS: I don't know.

THE COURT: ... [D]id your sister ever go in the bedroom before you?

THE WITNESS: No.

THE COURT: Did she ever tell you to go into the bedroom with [Rabago]?

THE WITNESS: Sometimes.

THE COURT: ... Did she threaten to do something bad?

THE WITNESS: No.

THE COURT: Where was your mother?

THE WITNESS: Somewhere.

THE COURT: How old [were] you when [Rabago] started touching you?

THE WITNESS: Like seven.

THE COURT: What grade were you in when [Rabago] touched your [vulva] with his hand?

THE WITNESS: Second.

Complainant B initially testified that she had first told Mother about what Rabago had done after Complainant A had done so while they were at the house of one of Mother's friends. Complainant B explained that she had never discussed what Rabago had done before that occasion because she feared that

"[h]e might do something bad." On cross-examination, however, Complainant B stated that she had described Rabago's acts to Mother at the Foodland parking lot in Puka-lani and that her sister, Complainant A, had been in the car with her at the time. She could not recall where they had been prior to the discussion in question, and she did not remember whether she or Complainant A had scratched Rabago's car or whether Rabago and Mother had argued that day.

### 3. Mother's testimony

Mother testified that she was "boy-friend/girlfriend" with Rabago for approximately "three-and-a-half years." Mother and Rabago had one child—Complainant C—together. Mother, Rabago, and Complainants A, B, and C lived together during the "three-and-a-half year" period in a three-bedroom house located at 296 Haulani Street, Pukalani, Maui. On October 4, 2000, Rabago was upset about a scratch on his car; Mother and Rabago argued about the scratch. Mother took Complainants A and B to the Foodland supermarket in Pukalani to purchase some groceries because they were on their way to the house of Mother's friend. Over defense counsel's objection, the circuit court asked Mother a jury-submitted inquiry regarding the whereabouts of Complainant C at the time Mother drove Complainants A and B to Foodland; Mother testified that Complainant C was with Rabago. At the Foodland parking lot, Mother asked the girls why they had scratched Rabago's car, and they stated that they were "tired of the way that [Rabago] was treating [Mother]."

Mother admitted that she had initiated the conversation about Rabago's touching the girls, having asked Complainants A and B whether Rabago had done so "by the private." Over defense counsel's objection, the circuit court asked Mother a jury-submitted question as to why she had queried the girls about sexual molestation; Mother responded, "I just had a thought because I got raped when I was young...." The circuit court also inquired, at a juror's request and over defense counsel's objection, whether Mother had asked Complainants A and B why they had not told her about Rabago's conduct

before October 4, 2000; Mother replied, "No, I didn't ask them." Initially, after Complainants A and B related to Mother what Rabago had done, Mother did not know what to believe. Complainants A and B only gave Mother "general information" and did not identify what they had been wearing at the times Rabago touched them, on how many occasions the touching had occurred, or the timing of the first or last touchings. As a result of the conversation, Mother made arrangements for the girls to stay with Father.

The following day, Mother confronted Rabago at the Pukalani house regarding what Complainants A and B had related to her and asked him whether he had touched them. Rabago began to cry, and responded to Mother's questions by "blam[ing her]" for leaving them with him"; Rabago also stated that "he never ... [s]tick his dick in them." Rabago did not, however, admit to touching or licking the girls' vulvas. Mother told Rabago that she had reported her daughters' claims to the police, and Rabago stated that he would leave the house, which he did.

### 4. Detective Lee's testimony

Maui Police Department (MPD) Detective Derek Lee, who was assigned to the sexual assault unit of MPD's Criminal Investigation Division, testified that he investigated Complainant A's and B's allegations. Detective Lee commenced his interviews of Complainants A and B, as well as other potential witnesses, on October 10, 2000. On October 11, 2000, Detective Lee interviewed Mother about the case; he testified at trial that she appeared nervous and disoriented. Detective Lee also stated on direct examination that the MPD conducted no medical examinations of complainants A and B because the nature of the allegations suggested that such investigation would not likely yield any worthwhile scientific evidence. Detective Lee testified on cross-examination that Complainant A had told him during their interview that Rabago had touched her a total of seven times, although she did not specify how many of those incidents had involved Rabago's hand and mouth, respectively. Additionally, Detective Lee stated that Complainant B had reported that Rabago had touched her

with his hand a total of four times and had "sucked" her vulva a total of four times as well. Detective Lee admitted that Complainant B could not recall when the last touching had occurred and that she also could not identify what part of Rabago's hand had touched her.

### 5. *Post-evidentiary motions*

Following the testimony described above, the prosecution rested its case, and Rabago moved for a judgment of acquittal, which was denied. The defense subsequently rested without calling any witnesses or offering any exhibits into evidence; defense counsel later renewed her motion for judgment of acquittal, which was denied, as further discussed *infra* in section I.C.

### C. *Jury Instructions And Defense Objections*

On June 26, 2000, in the course of settling jury instructions, defense counsel proffered the following motions and registered the following objections:

7. State's Proposed Instruction No. 10 read as follows:

> In Count One of the Indictment, the Defendant, SIMEON RABAGO, is charged with the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years.
> A person commits the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years if, while residing in the same home with a minor under the age of fourteen years, he *intentionally engage[s] in* three or more acts of sexual penetration or sexual contact with the minor, over a period of time while the minor [is] under the age of fourteen years.
> There are three material elements of the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years, each of which the prosecution must prove beyond a reasonable doubt.
> These three elements are:
> 1. That on or about the period of August 1, 1998, through September 30, 2000, inclusive, in the County of Maui, State of Hawai['.]i, the Defendant, SIMEON RABAGO, intentionally subjected [Complainant A] to three or more acts of sexual penetration or sexual contact over a period of time; and
> 2. That during that period of time, Defendant intentionally resided in the same home with [Complainant A]; and
> 3. That [Complainant A] was less than fourteen years old during that period.

[DEFENSE COUNSEL]: Judge, before we actually proceed with the instructions, since I will be placing instructions on the record relating to the elements instructions, I just wanted to make an oral motion to dismiss Count I and Count II, the Continuous Sexual Assault of a Minor Under the Age of Fourteen Years, based on the lack of unanimity requirement[,] on vagueness, and also on overbreadth.

THE COURT: Okay. I'm going to deny the motion. I think you made it at pretrial as well.

[DEFENSE COUNSEL]: I believe so.

THE COURT: Yeah, I believe I've already ruled on that.

. . . .

THE COURT: We're looking at State's [proposed] instruction number 10 which covers Count I.[7] Defense has an objection. Go ahead, state it.

[DEFENSE COUNSEL]: Yes, Judge, may I just make my objections to both [State's proposed] instructions 10 and 11? [8]

> A defendant is strictly liable with respect to the attendant circumstance of the complainant's age in a sexual assault.
> In order to find Defendant guilty of this count, you must agree unanimously that three or more requisite acts have occurred. You need not agree on which acts of sexual penetration or sexual contact constitute the requisite three acts.
> You must all agree unanimously on the ... state of mind with which Defendant committed the requisite acts.

8. State's Proposed Instruction No. 11 read as follows:

> In Count Two of the Indictment, the Defendant, SIMEON RABAGO, is charged with the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years.
> A person commits the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years if, while residing in the same home with a minor under the age of fourteen years, he intentionally engage[s] in three or more acts of sexual penetration or sexual contact with the minor, over a period of time while the minor [is] under the age of fourteen years.
> There are three material elements of the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years, each of which the prosecution must prove beyond a reasonable doubt.

THE COURT: Sure.

[DEFENSE COUNSEL]: They are the same objection. I am objecting because[,] one, there is a portion of the instruction relating to lack of unanimity. I simply reiterate our earlier position on the necessity to have a unanimity instruction pursuant to *State v. Arceo.* If that language goes in, again, we preserve whatever issues related to lack of unanimity, vagueness, and overbreadth in both State's instructions—number 11. That's all.

THE COURT: Okay, with respect to both 10 and 11, then, the Court will give those over objection. However, as modified as follows, the last sentence of each of those instructions will be stricken, and substituted in its place will be the following sentence, "Additionally," comma, "the Prosecution must prove beyond a reasonable doubt that the Defendant acted knowingly with respect to material elements 1 and 2", period. And we will insert that as the second to the last paragraph in each of instructions 10 and 11.

The circuit court ultimately instructed the jury with respect to Counts I and II as follows:

### Instruction No. 19

In Count One of the Indictment, the Defendant, SIMEON RABAGO, is charged with the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years.

A person commits the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years if, while residing in the same home with a minor under the age of fourteen years, he intentionally engaged in three or more acts of sexual penetration or sexual contact with the minor, over a period of time while the minor was under the age of fourteen years.

There are three material elements of the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years, each of which the prosecution must prove beyond a reasonable doubt.

These three elements are:

1. That on or about the period of August 1, 1998, through September 30, 2000, inclusive, in the County of Maui, State of Hawai[']i, the Defendant, SIMEON RABAGO, intentionally subjected [Complainant A] to three or more acts of sexual penetration or sexual contact over a period of time; and

2. That during that period of time, Defendant intentionally resided in the same home with [Complainant A]; and

3. That [Complainant A] was less than fourteen years old during that period.

A defendant is strictly liable with respect to the attendant circumstance of the complainant's age in a sexual assault.

Additionally, the prosecution must prove beyond a reasonable doubt that the defendant acted intentionally with respect to material elements 1 and 2.

In order to find Defendant guilty of this count, you must agree unanimously that three or more requisite acts have occurred. You need not agree on which acts of sexual penetration or sexual contact constitute the requisite three acts.

### Instruction No. 20

"Sexual penetration" means vaginal intercourse, anal intercourse, fellatio, cunnilingus, analingus, deviate sexual inter-

---

These three elements are:

1. That on or about the period of August 1, 1998, through September 30, 2000, inclusive, in the County of Maui, State of Hawai[']i, the Defendant, SIMEON RABAGO, intentionally subjected [Complainant B] to three or more acts of sexual penetration or sexual contact over a period of time; and

2. That during that period of time, Defendant intentionally resided in the same home with [Complainant B]; and

3. That [Complainant B] was less than fourteen years old during that period.

A defendant is strictly liable with respect to the attendant circumstance of the complainant's age in a sexual assault.

In order to find Defendant guilty of this count, you must agree unanimously that three or more requisite acts have occurred. You need not agree on which acts of sexual penetration or sexual contact constitute the requisite three acts.

You must all agree unanimously on the ... state of mind with which Defendant committed the requisite acts.

course, and any intrusion of any part of a person's body or any object into the genital or anal opening of another person's body; it occurs upon any penetration, however slight, but emission is not required. Each act of sexual penetration constitutes a separate offense.

### Instruction No. 21

"Sexual contact" means any touching of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts.

### Instruction No. 22

In Count Two of the Indictment, the Defendant, SIMEON RABAGO, is charged with the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years.

A person commits the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years if, while residing in the same home with a minor under the age of fourteen years, he intentionally engaged in three or more acts of sexual penetration or sexual contact with the minor, over a period of time while the minor was under the age of fourteen years.

There are three material elements of the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years, each of which the prosecution must prove beyond a reasonable doubt.

These three elements are:

1. That on or about the period of August 1, 1998, through September 30, 2000, inclusive, in the County of Maui, State of Hawai[']i, the Defendant, SIMEON RABAGO, intentionally subjected [Complainant B] to three or more acts of sexual penetration or sexual contact over a period of time; and

2. That during that period of time, Defendant intentionally resided in the same home with [Complainant B]; and

3. That [Complainant B] was less than fourteen years old during that period.

A defendant is strictly liable with respect to the attendant circumstance of the complainant's age in a sexual assault.

Additionally, the prosecution must prove beyond a reasonable doubt that the defendant acted intentionally with respect to material elements 1 and 2.

In order to find Defendant guilty of this count, you must agree unanimously that three or more requisite acts have occurred. You need not agree on which acts of sexual penetration or sexual contact constitute the requisite three acts.

### D. *Conclusion of trial*

On June 27, 2002, the jury found Rabago "not guilty" of Counts III and IV, charging sexual assaults in the third degree as to Complainant C, but found him "guilty as charged" as to Counts I and II, charging continuous sexual assaults of minors—Complainants A and B—under the age of fourteen years. On September 5, 2002, the circuit court sentenced Rabago to an indeterminate twenty-year maximum term of imprisonment as to Count I and an indeterminate twenty-year maximum term of imprisonment as to Count II, to be served consecutively to one another. On October 4, 2002, Rabago filed a timely notice of appeal.

## II. *STANDARD OF REVIEW*

### A. *Questions Of Constitutional Law*

"Whether a defendant is denied due process of law by virtue of the trial court's refusal to require the prosecution to elect the particular act on which it is relying in seeking a criminal conviction of a charged offense presents a question of constitutional law." *Arceo*, 84 Hawai'i at 11, 928 P.2d at 853. "We answer questions of constitutional law 'by exercising our own independent judgment based on the facts of the case,'" and, thus, questions of constitutional law are reviewed on appeal "under the 'right/wrong' standard." *State v. Kaua*, 102 Hawai'i 1, 7, 72 P.3d 473, 479 (2003) (quoting *State v. Aplaca*, 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001) (quoting *State v. Jenkins*, 93 Hawai'i

87, 100, 997 P.2d 13, 26 (2000) (citations omitted))).

### B. *Statutory Interpretation*

 "[T]he interpretation of a statute ... is a question of law reviewable de novo." *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (*quoting State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704 (1994). . . .
*Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 · (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .
>
> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.
> *Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (*quoting State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also

consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2)(1993). "Laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each · other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*[State v.] Rauch,* 94 Hawai'i 315,] 322–23, 13 P.3d [324,] 331–32 [ (2000) ] (quoting *State v. Kotis,* 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting *State v. Dudoit,* 90 Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting *State v. Stocker,* 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999) (quoting *Ho v. Leftwich,* 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998)))))).

*Kaua,* 102 Hawai'i at 7–8, 72 P.3d at 479–80 (2003).

### C. *Jury Instructions*

 "The standard of review for a trial court's issuance or refusal of a jury instruction is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Balanza,* 93 Hawai'i 279, 283, 1 P.3d 281, 285 (2000) (quotation and internal quotation marks omitted). "[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." *State v. Sua,* 92 Hawai'i 61, 69, 987 P.2d 959, 967 (1999) (quoting *State v. Pinero,* 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) (quotation omitted)) (brackets in original). In other words,

> [e]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reason-

able possibility that error may have contributed to conviction.

*Id.* (quoting *State v. Heard*, 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted)).

Jury instructions "to which no objection has been made at trial will be reviewed only for plain error." *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (citing *Pinero*, 75 Haw. at 291–92, 859 P.2d at 1374). If the substantial rights of the defendant have been affected adversely, the error may be considered as plain error. *See id.*

*State v. Van Dyke*, 101 Hawai'i 377, 383, 69 P.3d 88, 94 (2003) (quoting *State v. Aganon*, 97 Hawai'i 299, 302, 36 P.3d 1269, 1272 (2001)).

## III. *DISCUSSION*

Rabago's essential argument is that "the separate and distinct acts attributed to [him] do not constitute a continuing course of conduct" and, therefore, that the circuit court erred in failing, pursuant to *Arceo*, to instruct the jury with respect to specific unanimity. In this regard, Rabago contends that when "independent instances of culpable conduct [are] submitted to the jury in a single count that charge[s] but one offense, ... a specific unanimity instruction [is] necessary to ensure that each juror convicted the defendant on the basis of the same incident of culpable conduct."

Rabago acknowledges that, as evidenced by the legislative history underlying HRS § 707–733.5, the statute "appears to be intended by the Legislature to be a 'continuing offense'" and further concedes that "[i]n several post-*Arceo* cases, the Hawai'i Supreme Court has indicated that the 'unanimity' instruction of *Arceo* is not required for continuing offenses which, under the facts and circumstances of a given case, are based on a 'continuing course of conduct.'" Rabago asserts, however, that the post-*Arceo* cases

proscribe a "continuing course of conduct" as a "'series of acts set on foot by a single impulse and operated by an .unintermittent force' and not 'separate and distinct culpable acts.'" Additionally, Rabago contends that, notwithstanding the post-*Arceo* cases, this court has "reaffirmed the requirement of a unanimity instruction on issues involving 'multiple acts' as compared to issues involving 'alternative means.'"

The prosecution responds by asserting that "Rabago has failed to demonstrate the unconstitutionality underlying HRS § 707–733.5," given that "a party challenging a statute has the burden of proving unconstitutionality beyond a reasonable doubt...." After reviewing the holding and dissent in *Arceo*, as well as the legislative history underlying HRS § 707–733.5, the prosecution argues that "[t]he Hawai'i legislature was obviously concerned about constitutionality and due process and diligently considered those constitutional rights before enacting [HRS § ] 707–733.5."

. In support of its position that HRS § 707–733.5 is constitutional, the prosecution urges this court to adopt the approaches of two foreign jurisdictions and hold that HRS § 707–733.5 is constitutional, inasmuch as "[t]he Hawai'i legislature employed exceptionally clear language which leaves no doubt that the *criminal offense* being established was the *continuous* sexual abuse of a minor ... [and] took great care to 'protect' the due process rights of the defendant...." (Emphasis in original.) In light of *Arceo*, we cannot.

### A. *This Court's Decision In Arceo*

Our substantive analysis in the present matter commences with *Arceo*, which is the seminal decision in this jurisdiction regarding specific jury unanimity instructions. In *Arceo*, the defendant appealed a conviction of sexual assault in the first degree, in violation of HRS § 707–730(1)(b) (1993),[9] and sexual

---

9. HRS § 707–730 (1993) provided in relevant part:

**Sexual assault in the first degree.** (1) A person commits the offense of sexual assault in the first degree if:
....

(b) The person knowingly subjects to sexual penetration another person who is less than fourteen years old; provided this paragraph shall not be construed to prohibit practitioners licensed under [HRS] chapter[s] 453, 455, or

assault in the third degree, in violation of HRS § 707–732(1)(b) (1993), *see supra* note 2, arguing, *inter alia,* that

the circuit court erred in: (1) refusing to require the prosecution "to elect the specific acts upon which convictions ... were being sought" as to each count, in violation of his constitutional right to a unanimous verdict implicit in the due process clause of article I, section 5 of the Hawai'i Constitution; (2) "failing to instruct the jury that it must agree unanimously that [the defendant] committed the *same* specific act in reaching ... guilty verdict[s]" as to each count, likewise in violation of his constitutional right to a unanimous verdict....

84 Hawai'i at 3, 928 P.2d at 845 (emphasis in original). *Arceo* contains several holdings that are significant to the present matter.

First, we held that HRS §§ 707–730(1)(b) and 707–732(1)(b) did not constitute "continuing offenses," such that the prosecution could charge in a two-count indictment, as "two continuous offenses, sexual contact with a minor and sexual penetration of a minor," based on allegations of multiple acts of sexual contact and sexual penetration. *Id.* at 17–18, 928 P.2d at 859–60. More specifically, we held that

*sexual assault in the first degree, in violation of HRS § 707–730(1)(b), and sexual assault in the third degree, in violation of HRS § 707–732(1)(b), are not—and cannot be—"continuing offenses" and that each distinct act in violation of these statutes constitutes a separate offense under the HPC.* Were this not the case, "a person who has committed one sexual assault upon a victim [could] commit with impunity many other such acts during the same encounter,' and 'the commission of one act ... would insulate the perpetrator from further criminal liability for any additional acts of the same character perpetrated on the same minor in subsequent encounters." *[State v. ]Snook,* [210 Conn. 244,] 555 A.2d 390,] 399. We agree with the Connecticut Supreme Court that *"[s]uch a result defies*

*rationality," id., and, as such, is an absurdity that we presume that the legislature did not intend. See [State v. ]Malufau,* 80 Hawai'i 126,] 137, 906 P.2d [612,] 623 [ (1995) ].

*Id.* at 21–22, 928 P.2d at 863–64 (some brackets added and some in original) (emphases added).

Second, we adopted the approach of Justice Levin's dissent in *People v. Cooks,* 446 Mich. 503, 521 N.W.2d 275 (1994), which argued that " '[m]ultiple sex acts do not merge into a single continuing offense because the defendant can be convicted and punished for each separate act.' " *Arceo,* 84 Hawai'i at 16, 928 P.2d at 858 (quoting *Cooks,* 521 N.W.2d at 288 n. 4 (Levin, J., dissenting)). Correlatively, we noted that, when the prosecution "amalgamat[es] multiple offenses within a single count ... [, an appellate court must] confront[ ] ... equal protection and due process issues...." *Arceo,* 84 Hawai'i at 16, 928 P.2d at 858.

In the context of the foregoing, we observed that "[o]ther jurisdictions have held that *repeated acts of sexual assault on a child cannot, by their very nature, be treated as a single 'continuing' offense." Id.* (citations omitted) (emphasis added). In one such case, *State v. Petrich,* 101 Wash.2d 566, 683 P.2d 173 (1984), the Washington Supreme Court held that "[u]nder appropriate facts, a continuing course of conduct may form the basis of one charge in an information. But 'one continuing offense' must be distinguished from 'several distinct acts,' each of which could be the basis for a criminal charge." *Arceo,* 84 Hawai'i at 17, 928 P.2d at 859 (quoting *Petrich,* 683 P.2d at 177).

To highlight the distinction between "continuing offenses" and "several distinct acts," we defined a "continuing offense" as

a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an *unintermittent force,* however long a time it may occupy[, or] an offense which continues day by day[, or] a breach

460, from performing any act within their respective practices.
(2) Sexual assault in the first degree is a class A felony.

Effective July 10, 2001, the legislature amended HRS § 707–730(1)(b) in respects not material to this appeal. *See* 2001 2d Sp. Haw. Sess. L. Act 1, § 1 at 941.

of the criminal law, not terminated by a single act or fact, but subsisting for a definite period and intended to cover or apply to successive similar obligations or occurrences.

*Arceo,* 84 Hawai'i at 18, 928 P.2d at 860 (quoting *State v. Temple,* 65 Haw. 261, 267 n. 6, 650 P.2d 1358, 1362 n. 6 (1982) (citation omitted)) (emphasis added). Grounding the construct of "continuing offenses" in this jurisdiction's case and statutory law, we observed that

> [t]he test to determine whether [a] defendant intended to commit more than one offense in the course of a criminal episode is whether the evidence discloses one general intent or discloses *separate and distinct intents.* If there is but one intention, one general impulse, and one plan, there is but one offense.

*Arceo,* 84 Hawai'i at 18, 928 P.2d at 860 (quoting *State v. Ganal,* 81 Hawai'i 358, 379, 917 P.2d 370, 391 (1996) (quoting *State v. Castro,* 69 Haw. 633, 653, 756 P.2d 1033, 1047 (1988)) (quotation signals omitted)) (emphasis added). Moreover, we described the scope of "continuing offenses" as "circumscribed by HRS §§ 701–108(4) (Supp.1995),[10] 701–109(1)(e) (1993),[11] and 701–118(4) (1993).[12]" *Arceo,* 84 Hawai'i at 18, 928 P.2d at 860. We clarified the effect of the aforementioned statutes by reaffirming the reasoning espoused by the Hawai'i Supreme Court in *State v. Hoopii,* 68 Haw. 246, 710 P.2d 1193 (1985), which stated that

> HRS § 701–109(1)(e) prohibits multiple convictions where the defendant's actions constitute an uninterrupted, continuing course of conduct. *This prohibition, however, does not apply where these actions constitute separate offenses under the law.* Furthermore,

where a defendant in the context of one criminal scheme or transaction commits several acts independently violative of one or more statutes, he may be punished for all of them if charges are properly consolidated by the State in one trial.

*State v. Pilago,* 65 Haw. 22, 24, 649 P.2d 363, 365 (1982); *State v. Pia,* 55 Haw. 14, 19, 514 P.2d 580, 585 (1973).

*Arceo,* 84 Hawai'i at 21, 928 P.2d at 863 (quoting *Hoopii,* 68 Haw. at 252, 710 P.2d at 1197) (emphasis added). Thus, we noted that

> [e]xamples of continuing offenses, within the meaning of the [Hawai'i Penal Code (HPC)], include: (1) first degree murder, in violation of HRS § 707–701(1)(a) (1993) . . .; (2) first degree robbery, in violation of HRS § 708–840(1)(b) (1993); . . . (3) under certain circumstances, kidnapping, in violation of HRS § 707–720(1)(c) (1993); . . . (4) theft of a firearm, in violation of HRS §§ 708–830(7) (1993) and 708–830.5(1)(b) (1993); . . . and (5) theft of state property by deception, in violation of HRS § 708–830(2) (1993). . . . *Each of these offenses is statutorily defined as an uninterrupted and continuing course of conduct,* or manifests a plain legislative purpose to be treated as such, or both. *See* HRS §§ 701–108(4), 701–109(1)(e), and 701–118(4). . . .

*Arceo,* 84 Hawai'i at 18–19, 928 P.2d at 860–61 (citations omitted) (emphasis added). Applying the foregoing parameters and exemplars, we concluded that,

> [g]iven the clear language of, and interrelationship among, the provisions of the statutory scheme governing sexual offenses, *there is little wonder that the appellate courts of this state have consistently recognized that each act constituting a*

offense if "[t]he offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses."

10. HRS § 701–108(4) provides:
An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated. Time starts to run on the day after the offense is committed.

11. HRS § 701–109(1)(e) provides that a defendant may not be convicted of more than one

12. HRS § 701–118(4) provides that " '[c]onduct' means an act or omission, or, where relevant, a series of acts or a series of omissions, or a series of acts and omissions. . . ."

*sexual assault is punishable as a separate and distinct offense.*

*Arceo,* 84 Hawai'i at 20, 928 P.2d at 862 (emphasis added).

In sum, we distilled the following protocol for processing charges of multiple acts of sexual assault:

> that when separate and distinct culpable acts are subsumed within a single count charging a sexual assault—any one of which could support a conviction thereunder—and the defendant is ultimately convicted by a jury of the charged offense, the defendant's constitutional right to a unanimous verdict is violated unless one or both of the following occurs: (1) at or before the close of its case-in-chief, the prosecution is required to elect the specific act upon which it is relying to establish the "conduct" element of the charged offense; or (2) the trial court gives the jury a specific unanimity instruction, *i.e.,* an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

*Arceo,* 84 Hawai'i at 32–33, 928 P.2d at 874–75.

## B. *Legislative History Underlying HRS § 707–733.5*

Dissenting in *Arceo,* Justice Nakayama spoke directly to the legislature as follows:

> I agree with the majority's holding ... that under the current Hawai'i Penal Code (HPC), sexual assault in the first degree pursuant to Hawai'i Revised Statutes (HRS) § 707–730(1)(b) (1993), and sexual assault in the third degree pursuant to HRS § 707–732(1)(b) (1993) are not "continuing offenses" because they represent distinct acts and therefore, separate offenses. However, I urge the Hawai'i legislature to enact a "continuous sexual abuse of a child" statute under the HPC, similar to the statute enacted by the State of California, to cure the problems inherent in the criminal prosecution of sexual abuse cases involving a minor of tender years who is unable to specifically recall dates, instances or circumstances surrounding the abuse.

*Arceo,* 84 Hawai'i at 38, 928 P.2d at 880 (Nakayama, J., dissenting).

The House of Representatives responded by introducing House Bill (H.B.) 111 during the 1997 Hawai'i legislative session. The House Judiciary Committee explained H.B. 111 as follows:

> The purpose of this bill is to establish the criminal offense known as continuous sexual abuse of a child, similar to the statute enacted by California, that defines the circumstances and provides specific guidelines under which the sexual assault of a minor is. deemed a continuing offense. The bill also makes the offense of continuous sexual abuse of a child a class A felony.
>
> : . . . .
>
> *Your Committee finds that, under the present law, the crimes of sexual assault in the first, second, third, and fourth degrees are not "continuing offenses" in that they represent distinct acts and, therefore, separate offenses.* However, many young children who have been sexually abused over an extended period of time may be unable to specifically recall or identify dates, instances, or circumstances surrounding the abuse. Because of community concern over the safety of our children, this bill makes the continuous sexual abuse of a child a class A felony.

Hse. Stand. Comm. Rep. No. 36, in 1997 House Journal, at 1131–32 (emphasis added). Addressing the same bill, the Senate Judiciary Committee declared:

> Your Committee finds that public safety demands immediate action against sex offenders who prey on children by taking advantage of their relationship of trust with respect to the minor. According to the latest Hawai['i statistics provided by the Crime Prevention and Justice Assistance Division of the Department of the Attorney General, sexual assault against minors is an offense in which an overwhelming majority of minor victims knew their perpetrator. Even more alarming is the fact that slightly over one-third of all minor victims in Hawai['i had an intrafamilial relationship with the sex offender.

Your Committee further finds that these types of cases are often difficult to prosecute given that molesters who reside in the same household with children sexually abuse their victim over an extended period of time. The child often has difficulty in remembering or identifying the specific dates on which they were molested, and may even repress the memory of events because they want to forget the incidents involving the loved one or family member.

Sen. Stand. Comm. Rep. No. 1594, in 1997 Senate Journal, at 1496–97.

The 1997 Hawai'i legislature ultimately enacted HRS § 707–733.5, noting in section 1 of the act that

*[t]he legislature finds that sexual assault in the first, second, third, and fourth degrees, in the manner prohibited under the Hawai'i penal code, are not "continuing offenses" in that they represent distinct acts and, therefore, separate offenses.* The legislature finds, however, that many young children who have been sexually abused over an extended period of time may be unable to specifically recall or identify dates, instances, or circumstances surrounding the abuse.

As discussed by Justice Nakayama in *State v. Arceo* (No. 16950, November 18, 1996), the prosecution's key witness in cases involving the sexual assault of a minor is usually a child with a limited ability to recall alleged acts with specificity. Justice Nakayama argued that this is "particularly problematical and evident in cases involving sexual assault by a parent, where the minor may be of tender years, under the exclusive control of the parent or guardian, and when the abuse has occurred on a number of occasions over a period of time." The dissent cited the following language in support of the idea that young children subjected to a continuing pattern of abuse are not likely to clearly identify the specific instances when particular acts took place:

"Particularly when the accused resides with the victim or has virtually unchecked access to the child, and the abuse has occurred on a regular basis over a prolonged period of time, the child may have no meaningful reference point of time or detail by which to distinguish one specific act from another. The more frequent and repetitive the abuse, the more likely it becomes that the victim will be unable to recall specific dates and places. Moreover, because the molestation usually occurs outside the presence of witnesses, and often leaves no permanent physical evidence, the state's case rests on the testimony of a victim whose memory may be clouded by blur of abuse and a desire to forget."

*People v. Aldrich,* 849 P.2d 821, 826 (Colo. Ct.App.1992) (citation omitted) (Quoting *State v. Brown,* 55 Wash.App. 738, 780 P.2d 880 (1989).

Justice Nakayama urged the legislature to enact a "continuous sexual abuse of a minor" statute, similar to the one enacted by the State of California, to address the problems inherent in the criminal prosecution of sexual abuse cases involving young children who are unable to specify the time, places, or circumstances of each act. The legislature agrees that there is a need for such a statute, and finds that the California statute has been upheld as constitutional by that State and does not violate the right to due process.

*The purpose of this act is to set forth the parameters of the offense of continuous sexual assault of a minor under the age of fourteen years, similar to the statute enacted by California, that defines the circumstances and provides specific guidelines under which the sexual assault of a minor is deemed a continuing offense.* This Act also makes the continuous sexual assault of a minor under the age of fourteen years a class A felony.

1997 Haw. Sess. Laws Act 379, § 1 at 1191–92 (emphases added).

### C. *Arceo's Progeny*

Following *Arceo,* this court has repeatedly held that no "specific unanimity" instruction is necessary where the defendant is charged with a continuing offense, based on facts and circumstances that constitute a "continuing course of conduct." *See State v. Hironaka,* 99 Hawai'i 198, 208–09, 53 P.3d 806, 816–17

(2002) (observing that the charge of promoting a dangerous drug in the third degree required no specific unanimity instruction, inasmuch as the defendant's possession of a methamphetamine pipe "occurr[ed] unintermittently, in the same place, ... involved the same glass pipe containing the same residue of methamphetamine," and was not "divisible into separate and distinct acts of possession"); *State v. Apao*, 95 Hawai'i 440, 447–48, 24 P.3d 32, 39–40 (2001) (holding that no specific unanimity instruction was required in connection with a charge of terroristic threatening in the second degree, under circumstances in which the prosecution adduced evidence of a continuing course of conduct that occurred on "one uninterrupted occasion during which [the defendant] made multiple verbal and physical threats ... [with] one intention, impulse, or plan"); *State v. Rapoza*, 95 Hawai'i 321, 329, 22 P.3d 968, 976 (2001) (noting that the defendant's "conduct in discharging the firearm several times did not amount to 'separate and distinct culpable acts'"; accordingly, no specific unanimity instruction was required for the charges of two counts of attempted first-degree assault and one count of first-degree reckless endangering); *State v. Valentine*, 93 Hawai'i 199, 208–09, 998 P.2d 479, 488–89 (2000) (observing that no specific unanimity instruction was required in connection with a charge of attempted prohibited possession of a firearm, inasmuch as "the evidence concerned only a single episode between [the defendant] and [the complainant], during which the two allegedly engaged in a continuous struggle for the possession and control of the firearm"); *see also State v. Kealoha*, 95 Hawai'i 365, 376–77, 22 P.3d 1012, 1023–24 (App.2000) (noting that manufacturing a dangerous drug, as the conduct underlying the offense of promoting a dangerous drug in the first degree, "by its nature, ... may be a single continuous offense").[13]

Separate and apart from the foregoing case law, this court has further refined the specific unanimity requirement set forth in *Arceo* by distinguishing between cases involving offenses based on "multiple acts," on the one hand, and "alternative means," on the other. *See State v. Jones*, 96 Hawai'i 161, 29 P.3d 351 (2001); *State v. Klinge*, 92 Hawai'i 577, 994 P.2d 509 (2000). In *Klinge*, this court explained that the jury was not required to be unanimous with respect to the "means" by which the defendant committed the offense of terroristic threatening in the first degree, stating that "the general principle that juries need not agree on alternative means of establishing the mental state component possessed by the defendant is well established and widely recognized." *Klinge*, 92 Hawai'i at 587, 994 P.2d at 519 (citations omitted). Thus, this court held that "HRS § 707–715 [ (*i.e.*, terroristic threatening in the first degree) ] defines a single criminal offense ... [and] that HRS § 707–715(1) [ (*i.e.*, intentional or reckless terrorization) ] and (2) [ (*i.e.*, intentional or reckless incitement of evacuation of a building) ] constitute alternative means of establishing the *mens rea* of the offense of terroristic threatening—either one giving rise to the *same criminal culpability*." *Id.* at 590, 994 P.2d at 522 (emphasis in original).

In *Jones*, we further explored the dichotomy between "multiple acts" and "alternative means" cases, expressly adopting the reasoning of the Kansas Supreme Court, as follows:

> In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing

---

13. *But see State v. Keomany*, 97 Hawai'i 140, 153–54, 34 P.3d 1039, 1052–53 (App.2000) (noting that, based on *Arceo*, "sexual assault in the first and third degrees are not continuing offenses," so that the "[d]efendant was ... properly charged under separate counts for the separate offenses, and the trial court was required to instruct the jury on each of the separate counts"; inasmuch as there were equal numbers of discrete acts alleged as there were counts, no bill of particulars was necessary to show which count applied to which act, and no specific unanimity instruction was required).

the crime proved beyond a reasonable doubt.

> *In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime.* To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

*State v. Timley*, 255 Kan. 286, 875 P.2d 242, 246 (1994) (quoting *State v. Kitchen*, 110 Wash.2d 403, 756 P.2d 105, 109 (1988)) (citations and quotation marks omitted). *Jones*, 96 Hawai'i at 170, 29 P.3d at 360 (emphasis added).

D. *The Conduct Element Underlying HRS § 707–733.5, By Its Very Nature, Constitutes Multiple Discrete Acts And Therefore Implicates the Arceo Rule.*

 The conduct element requisite to HRS § 707–733.5, *i.e.*, "three or more acts of sexual penetration or sexual contact," when combined with the attendant circumstance of "over a period of time," *see supra* note 1, necessarily entails multiple impulses and the operation of intermittent forces and thus deviates from the construct of "continuing offenses" adopted by this court in *Arceo. See* 84 Hawai'i at 18, 928 P.2d at 860. Multiple acts of sexual penetration or sexual contact, committed "over a period of time," bespeak "separate and distinct intents," which, under the formulation that this court adopted in

*Arceo*, can only occur under circumstances in which the "defendant intended to commit more than one offense in the course of [the] criminal episode." *Id.* In contrast to the serial but separate acts of sexual assault that comprise HRS § 707–733.5, the examples of continuing offenses enumerated by this court in *Arceo* involve periods of protracted but conceptually distinct motor activity, but nevertheless constitute a single episode, *e.g.*, first degree murder, kidnapping, theft of a firearm, and theft of state property by deception. *Id.* at 18–19, 928 P.2d at 860–61; *see also State v. Hironaka*, 99 Hawai'i 198, 208–09, 53 P.3d 806, 816–17 (2002); *State v. Apao*, 95 Hawai'i 440, 447–48, 24 P.3d 32, 39–40 (2001); *State v. Rapoza*, 95 Hawai'i 321, 329, 22 P.3d 968, 976 (2001); *State v. Valentine*, 93 Hawai'i 199, 208–09, 998 P.2d 479, 488–89 (2000); *State v. Kealoha*, 95 Hawai'i 365, 376–77, 22 P.3d 1012, 1023–24 (App.2000). In other words, the foregoing continuing offenses are distinguishable from HRS § 707–733.5, insofar as they are not divisible into distinct culpable acts; [14] "[e]ach of these [continuing] offenses is statutorily defined as an *uninterrupted and continuing course of conduct* ...." *Id.* at 19, 928 P.2d at 860 (emphasis added).

As discussed above, *Arceo* recognized that the aggregated acts of sexual assault that now constitute the conduct element of HRS § 707–733.5 are inherently separate, on the basis that " '[m]ultiple sex acts do not merge into a single continuing offense because the defendant can be convicted and punished for each separate act.' " *Arceo*, 84 Hawai'i at 16, 928 P.2d at 858 (quoting *Cooks*, 521 N.W.2d at 288 n. 4 (Levin, J., dissenting)). That being the case, and

---

14. At first glance, first degree murder, in violation of HRS § 707–701(1)(a), would seem to be an exception to this proposition, inasmuch as it is committed when a person intentionally or knowingly "causes the death of ... [m]ore than one person in the same or separate incident[.]" Second degree murder, however, "is not a lesser included offense of first degree murder," *Briones v. State*, 74 Haw. 442, 449 n. 3, 848 P.2d 966, 970 n. 3 (1993), "because the two crimes entail different requisite states of mind[.]" *State v. Ganal*, 81 Hawai'i 358, 379–80 n. 26, 917 P.2d 370, 391–92 n. 26 (1996). Not being divisible

into distinctly culpable acts, first degree murder *must* therefore be a "continuing offense." Cf. *Rapoza*, 95 Hawai'i at 329, 22 P.3d at 976 (holding that defendant's discharging of firearm several times in the direction of each complainant "did not amount to 'separate and distinct culpable acts,' but rather betokened 'a continuous, unlawful ... series of acts set on foot by a single impulse and operated by an unintermittent force' and, thus, constituted but one breach of criminal law' ") (citation omitted) (ellipsis points in original).

[g]iven the clear language of, and interrelationship among, the provisions of the statutory scheme governing sexual offenses, *there is little wonder that the appellate courts of this state have consistently recognized that each act constituting a sexual assault is punishable as a separate and distinct offense.*

*Id.* at 20, 928 P.2d at 862 (emphasis added). Accordingly, we held in *Arceo* that

sexual assault in the first degree, in violation of HRS § 707–730(1)(b), and sexual assault in the third degree, in violation of HRS § 707–732(1)(b), are not—and cannot be—"continuing offenses" and that each distinct act in violation of these statutes constitutes a separate offense under the HPC.

*Id.* at 21, 928 P.2d at 863 (emphasis added).

▮▮▮ If HRS § 707–733.5 were an "alternative means" statute, such that the offense of continuous sexual assault of a minor under the age of fourteen years could be "committed in more than one way, . . . unanimity as to guilt for the single crime charged" would be "required," although "unanimity . . . as to the means by which the crime by which the crime was committed" would not, "so long as substantial evidence support[ed] each alternative means." *Jones*, 96 Hawaiʻi at 170, 29 P.3d at 360 (citation and internal quotation signals omitted). But HRS § 707–733.5 is *not* an "alternative means" statute. It is a "multiple acts" statute, precisely because, pursuant to its terms, "several acts are alleged and any [combination] of them could constitute the crime charged." *Jones*, 96 Hawaiʻi at 170, 29 P.3d at 360 (citation and internal quotation signals omitted). Accordingly, we hold that "the jury must be unanimous as to which act[s] . . . constitute[d] the crime." *Id.* That being the case, Instruction Nos. 19 and 22, as read to the jury were

prejudicially erroneous. We further hold that

[t]o ensure jury unanimity . . . , we require that either the [prosecution] elect the particular criminal acts upon which it will rely for conviction, or that the trial court instruct the jur[ors] that all of them must agree that the same underlying criminal act[s] ha[ve] been proved beyond a reasonable doubt.

*Id.*

We are aware that the legislature has "deemed [HRS § 707–733.5 to be] a continuing offense," while at the same time conceding that *"sexual assault in the first, second, third, and fourth degrees, in the manner prohibited under the Hawaiʻi penal code, are not 'continuing offenses' in that they represent distinct acts and, therefore, separate offenses."* 1997 Haw. Sess. Laws Act 379, § 1 at 1191–92 (emphasis added). Nevertheless, "[a]s we have indicated previously, the legislature's mere labeling of a criminal offense [in a particular manner] does not necessarily make it so. *It is the judicial branch that independently determines whether such a label is justified." State v. Nakata*, 76 Hawaiʻi 360, 379, 878 P.2d 699, 718 (1994) (emphasis added). Thus, as an imperative of the separation of powers doctrine, it is the province of this court, and not the legislature, ultimately to ascertain whether, for purposes of HRS § 707–733.5, multiple acts of sexual penetration or sexual contact may be deemed a "continuing offense." As previously discussed, we hold that such acts are, by nature, separate and discrete and therefore may not form the basis of a "continuing offense."[15]

We therefore hold, as in *Arceo*, that trial courts must abide by the following protocol in cases in which defendants are charged under HRS § 707–733.5 and the prosecution

---

15. The cornerstone of the dissenting opinion's argument is an uncritical acceptance of the proposition that an offense, as a *per se* matter, becomes "continuing"—*i.e.*, describes a continuing course of conduct—whenever the legislature expresses an intention to that effect. The fact remains, however, that an offense is truly "continuing" if its attributes are capable of making it so. *See supra* section III.D.

In other words, the legislature cannot transform a cow into a horse merely by declaring that a cow is a horse. We therefore disagree with the approach taken by the California courts with respect to California Penal Code § 288.5, which consists of (1) the same uncritical willingness to accept that an offense describes a continuing course of conduct simply because the legislature says it does, and (2) the tautological conclusion that jury unanimity as to each act of sexual assault or contact is unnecessary because the offense supposedly entails a continuing course of conduct.

adduces evidence of more than three acts of sexual penetration and/or sexual contact with respect to any given minor under the age of fourteen years:

> [A]t or before the close of its case-in-chief, the prosecution ... [must] elect the specific act[s] upon which it is relying to establish the "conduct" element of the charged offense; or ... the trial court [must] give[ ] the jury a specific unanimity instruction, *i.e.*, an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act[s] ha[ve] been proved beyond a reasonable doubt.

*Arceo*, 84 Hawai'i at 32–33, 928 P.2d at 874–75.[16]

## IV. *CONCLUSION*

Based on the foregoing analysis, we vacate the circuit court's judgment of conviction of and sentence for two counts of continuous sexual assault of a minor under the age of fourteen years, in violation of HRS § 707–733.5, and remand this matter to the circuit court for further proceedings consistent with this opinion. We also strike down HRS § 707–733.5(2) as an unconstitutional violation of a defendant's right to due process of law. We emphasize, however, that the remainder of HRS § 707–733.5 clearly passes constitutional muster and, accordingly, survives Rabago's challenge.

Dissenting Opinion by NAKAYAMA, J., with whom, MOON, C.J., joins.

I disagree with the majority's holding that, in light of *State v. Arceo*, 84 Hawai'i 1, 928

P.2d 843 (1996), and its progeny, the trial court was required to instruct the jury that it must be unanimous as to which acts constituted the crime. Majority Opinion (Majority) at 238, 254, 81 P.3d at 1153, 1169. I further disagree with the majority's holding that Hawai'i Revised Statutes (HRS) § 707–733.5(2) (Supp.2002)[1] should be struck down as an unconstitutional violation of a defendant's constitutional right to due process. Majority at 238–239, 254–255, 81 P.3d at 1153–1154, 1169–1170. The holding in the majority opinion suggests that, for purposes of HRS § 707–733.5, multiple acts of sexual penetration or sexual contact "are, by nature, separate and discrete, and, therefore, may not form the basis of a 'continuing offense.'" Majority at 253–254, 81 P.3d at 1168–1169. As such, the majority opinion remands this case and instructs all trial courts (1) in which defendants are charged under HRS § 707–733.5, and (2) where the prosecution adduces evidence of more than three acts of sexual penetration and/or sexual contact, as follows:

> [A]t or before the close of its case-in-chief, the prosecution ... [must] elect the specific act[s] upon which it is relying to establish the "conduct" element of the charged offense; or ... the trial court [must] give[ ] the jury a specific unanimity instruction, *i.e.*, an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act[s] ha[ve] been proved beyond a reasonable doubt.

---

**16.** In as much as we dispose of Rabago's points of error entirely on state law grounds, we need not, and do not, reach his federal claims.

**1.** HRS § 707–733.5 provides:

> **Continuous sexual assault of a minor under the age of fourteen years.** (1) Any person who:
> (a) Either resides in the same home with a minor under the age of fourteen years or has recurring access to the minor; and
> (b) Engages in three or more acts of sexual penetration or sexual contact with the minor over a period of time, but while the minor is under the age of fourteen years, is guilty of the offense of continuous sexual assault of a minor under the age of fourteen years.
> (2) To convict under this section, the trier of fact, if a jury, need unanimously agree only

that the requisite number of acts have occurred; the jury need not agree on which acts constitute the requisite number.
> (3) No other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section, unless the other charged offense occurred outside the time frame of the offense charged under this section or the other offense is charged in the alternative. A defendant may be charged with only one count under this section unless more than one victim is involved, in which case a separate count may be charged for each victim.
> (4) Continuous sexual assault of a minor under the age of fourteen years is a class A felony.

Majority at 249, 81 P.3d at 1164 (brackets in the original). Because HRS § 707–733.5 provides specific guidelines in determining when sexual assault of a minor is a continuing offense, HRS § 707–733.5(2) neither violates *Arceo* and its progeny nor is an unconstitutional violation of a defendant's right to due process. Therefore, I must respectfully dissent.

**A. HRS § 707–733.5, by its plain language and in accordance with its express legislative intent, affirms that a continuous sexual assault of a minor constitutes a "continuous course of conduct" offense.**

In *Arceo*, the majority held that, based upon the definition of "continuing offense"[2] and given the plain language of HRS § 707–730(1)(b) (1993)[3] (sexual assault in the first degree) and HRS § 707–732(1)(b) (1993)[4] (sexual assault in the third degree), sexual assault in the first and third degree "are not—and cannot be—'continuing offenses' and ... each distinct act in violation of these statutes constitutes a separate offense under the [Hawai'i Penal Code]." *Arceo*, 84 Hawai'i at 21, 928 P.2d at 863. As such, the majority held that, where evidence of multiple culpable acts are subsumed within a single count charging sexual assault, the defendant is entitled to either an election by the prosecution of the single act upon which it is relying upon for a conviction or a specific unanimity instruction. *Id.* at 32–33, 928 P.2d at 874–75. In my dissent, I agreed that sexual assault in the first and third degree "are not 'continuing offenses' because they represent distinct acts and therefore, separate offenses." *Id.* at 38, 928 P.2d at 880 (Nakayama, J., dissent-

ing). However, I recognized the problems inherent in the criminal prosecution of sexual molestation cases involving a child of tender years who cannot recall specific dates, instances, or circumstances surrounding the molestation, and, therefore, I urged the legislature to enact a "continuous sexual abuse of a child" statute. *Id.* at 38–39, 928 P.2d at 880–81 ("I believe that a child's inability to specifically remember every detail and date of an alleged assault should not form a basis on which to insulate a defendant from conviction.").

Subsequently, in 1997, in response to *Arceo*, the Hawai'i legislature enacted HRS § 707–733.5.1997 Haw. Sess. Laws Act 379. In Section 1 of the Act, the legislature acknowledged my concern about the problems encountered in prosecuting sexual abuse cases where the victim is a minor and expressed the need for a "continuous sexual abuse of a minor" statute, similar to that enacted in California:

The legislature finds that sexual assault in the first, second, third, and fourth degrees, in the manner prohibited under the Hawai'i penal code, are not "continuing offenses" in that they represent distinct acts and, therefore, separate offenses. *The legislature finds, however, that many young children who have been sexually abused over an extended period of time may be unable to specifically recall or identify dates, instances, or circumstances surrounding the abuse.*

. . . .

Justice Nakayama urged the legislature to enact a "continuous sexual abuse of a

**2.** *Arceo* explained that a "continuing offense" is defined as

a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy, or an offense which continues day by day, or a breach of the criminal law, not terminated by a single act or fact, but subsisting for a definite period and intended to cover or apply to successive similar obligations or occurrences.

*Arceo*, 84 Hawai'i at 18, 928 P.2d at 860 (internal brackets and formatting omitted).

**3.** HRS § 707–730(1)(b) provided that "[a] person commits the offense of sexual assault in the first

degree if ... [t]he person knowingly subjects to sexual penetration another person who is less than fourteen years old; provided this paragraph shall not be construed to prohibit practitioners licensed under chapter 453, 455, or 460, from performing any act within their respective practices."

**4.** HRS § 707–732(1)(b) provided that "[a] person commits the offense of sexual assault in the third degree if ... [t]he person knowingly subjects to sexual contact another person who is less then fourteen years old or causes such a person to have sexual contact with the person[.]"

minor" statute, similar to the one enacted by the State of California, to address the problems inherent in the criminal prosecution of sexual abuse cases involving young children who are unable to specify the time, place, or circumstances of each act. *The legislature agrees that there is a need for such a statute, and finds that the California statute has been upheld as constitutional by that State and does not violate the right to due process.*

1997 Haw. Sess. Laws Act 379, § 1 at 1192–93 (emphases added). The legislature further clarified the purpose of the Act:

> *The purpose of this act is to set forth the parameters of the offense of continuous sexual assault of a minor under the age of fourteen years,* similar to the statute enacted by California, *that defines the circumstances and provides specific guidelines under which the sexual assault of a minor is deemed a continuing offense.*

*Id.* at 1192 (emphases added). Accordingly, the legislature took a commendable step in enacting a statute that would, on one hand, remedy the problems that continually surface in the criminal prosecution of sexual abuse cases involving minors who are unable to recall specific dates, instances or circumstances surrounding the abuse, while, on the other hand, protect a defendant's right to due process.

HRS § 707–733.5 was validly enacted. When it enacted HRS § 707–733.5, the legislature employed exceptionally clear language that leaves no doubt that the criminal offense being established was the continuous sexual abuse of a minor. *See generally People v. Avina,* 14 Cal.App.4th 1303, 1309, 18 Cal. Rptr.2d 511, 514 (1993) (explaining that a continuous course of conduct offense arises in two contexts: "The first is when the acts are so closely connected that they form part of one and the same transaction, and thus, one offense. The second is when the statute contemplates a continuous course of conduct of a series of acts over a period of time"). In particular, the continuing offense construct of HRS § 707–733.5 is expressly delineated in HRS § 707–733.5(2), which provides that, "[t]o convict under this section, the trier of fact, if a jury, *need unanimously agree only*

*that the requisite number of acts have occurred;* the jury need not agree on which acts constitute the number." (Emphasis added.) *See Avina,* 14 Cal.App.4th at 1310, 18 Cal.Rptr.2d 511 ("Subdivision (b) of [Penal Code § 288.5] states expressly that it is to be treated as a continuous-course-of-conduct crime for purposes of the unanimity rule; that unanimity is not required on any particular acts of molestation. Obviously the Legislature *intended* to create a course-of-conduct offense."). Moreover, like other course of conduct offenses, HRS § 707–733.5 focuses on a series of acts (three or more acts) over a period of time, on the same victim and generally resulting in cumulative injury. *See id.* at 1311, 18 Cal.Rptr.2d 511 (explaining that, even though Penal Code § 288.5 can be violated by committing only three individual acts, it is not removed from the course of conduct category, inasmuch as "[t]he three-act requirement merely sets a 'baseline' for measuring the course of conduct, while '[t]he continuous-access requirement makes clear that the statute was targeted at the resident child abuse situation, where problems with generic testimony are most likely to arise' "). Finally, under HRS § 707–733.5(3), a defendant can only be charged with one count, unless there is more than one victim, and no other felony sex offense may be charged involving the same victim and occurring within the charged time period. *See id.* ("[Penal Code § ] 288.5 displays a final characteristic of the course-of-conduct crime.... When a criminal statute punishes a course of conduct, the prosecution may not divide that course up into multiple counts of the offense; the entire continuous course constitutes only a single violation of the statute. The Legislature expressly incorporated this attribute of the course-of-conduct crime in [Penal Code § 288.5], subdivision (c)[.]"). Inasmuch as sexual assaults by "resident molesters" constitute a continuous course of conduct of a series of acts over a period of time, HRS § 707–733.5 clearly contemplated, and ultimately established, a continuous course of conduct offense. Even Rabago concedes as such.

The majority finds it necessary to highlight the difference between "continuing offenses" and "several distinct acts" and then

distinguish between cases involving offenses based on "multiple acts" and offenses based on "alternative means." Majority at 247–254, 251–252, 81 P.3d at 1162–1169, 1166–1167. The majority insists that "[t]he conduct element requisite to HRS § 707–733.5, ... when combined with the attendant circumstances of 'over a period of time,' ... deviates from the construct of 'continuing offenses' adopted by this court in *Arceo* [,]" Majority at 252, 81 P.3d at 1167, and specifically declares that "HRS § 707–733.5 is not an 'alternative means' statute. It is a 'multiple acts' statute, precisely because, pursuant to its terms, 'several acts are alleged and any combination of them could constitute the crime charged[,]" Majority at 252–253, 81 P.3d at 1167–1168 (citation and internal brackets omitted). The majority's finding is in direct contravention of the legislative purpose and plain language of HRS § 707–733.5. By relying on *Arceo* and its progeny, the majority incorrectly concludes that multiple acts of sexual penetration or sexual contact "are, by nature, separate and discrete and therefore may not form the basis of a 'continuing offense.'" Majority at 252–254, 81 P.3d at 1167–1169. None of the cases relied upon by the majority for this very proposition involved a charge under HRS § 707–733.5. In fact, *State v. Klinge*, 92 Hawai'i 577, 994 P.2d 509 (2000), involved a claim of terroristic threatening in the first degree, in violation of HRS § 707–715, and, is therefore, inapposite and does not stand for the majority's proposition that, under HRS § 707–733.5, multiple acts of sexual abuse

are separate and distinct, and, thus, are not "continuing offenses." The majority's attempt to disregard the legislature's intent in enacting HRS § 707–733.5 and circumvent HRS § 707–733.5's express terms, while at the same time acknowledging that the legislature "has deemed HRS § 707–733.5 to be a continuing offense," Majority at 253, 81 P.3d at 1168, should not be permitted.[5]

**B. Inasmuch as HRS § 707–733.5 is modeled after California Penal Code § 288.5, cases holding that Penal Code § 288.5 does not deprive a defendant of his right to due process are instructive.**

The fifth and fourteenth amendments[6] to the United States Constitution guarantee a defendant the right to due process of law. "It is settled that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *People v. Whitham*, 38 Cal.App.4th 1282, 1297, 45 Cal. Rptr.2d 571, 580 (1995) (citation and internal quotation marks omitted). The United States Supreme Court, however, "has never held jury unanimity to be a requisite of due process of law." *Id.* at 1298, 45 Cal.Rptr.2d 571 (internal quotation marks omitted).

This court has not yet had the opportunity to address whether HRS § 707–733.5(2) is a violation of a defendant's right to due pro-

---

**5.** The majority's opinion disregards the legislature's clear intent in enacting HRS § 707–733.5 by insisting that, notwithstanding the legislature's expression that a continuous sexual assault of a minor is a continuing offense, "an offense is truly 'continuing' if its attributes are capable of making it so." Majority at 251 n. 15, 81 P.3d at 1169 n. 15. It is not this court's duty to judicially legislate. Instead, this court's primary responsibility is to ascertain and give effect to the intention of the legislature in accordance with the law's plain and obvious meaning. In enacting HRS § 707–733.5 to remedy the problems inherent in the prosecution of "resident molesters," the legislature clearly established a continuing course of conduct offense. The legislature expressed that the purpose of HRS § 707–733.5 "is to set forth the parameters of the offense of continuous sexual assault of a minor under the age of fourteen years ... that defines the circum-

stances and provides specific guidelines under which the sexual assault of a minor is deemed a continuing offense" and declared that sexual assaults by "resident molesters" constitute a continuing offense. As such, in giving effect to HRS § 707–733.5, this court is not at liberty to disregard HRS § 707–733.5's plain language and obvious meaning, as the majority now sees fit to do.

**6.** The Due Process Clause of the Fifth Amendment, which applies to the federal government, provides: "No person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fourteenth Amendment, which applies to the states, provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

cess. Indeed, like Hawai'i, California recognizes that "[d]ue process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." *People v. Higgins*, 9 Cal.App.4th 294, 300, 11 Cal.Rptr.2d 694 (1992). Inasmuch as the legislature made clear that HRS § 707–733.5 is modeled after California Penal Code § 288.5,[7] California cases holding that Penal Code § 288.5 does not deprive a defendant of his constitutional right to due process are highly persuasive and instructive.[8]

California courts have consistently rejected constitutional challenges to Penal Code § 288.5. *Higgins* was the first case to address a due process challenge to Penal Code § 288.5. In *Higgins*, the California Court of Appeals held Penal Code § 288.5 to be constitutional and, thus, rejected the defendant's claim that it violated his due process rights. The court reasoned that, inasmuch as the defendant was charged with one offense, rather than multiple offenses, and the information contained a specific time frame that referred to the time span during which the alleged acts occurred, the defendant's due process rights were not violated. *Id.* at 300, 11 Cal.Rptr.2d 694 (explaining that "[d]ue process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken surprise by evidence offered at his trial," and,

therefore, "the prosecution of child molestation charges based on generic testimony does not, of itself, result in a denial of a .defendant's due process right to fair notice of the charges against him"). The court further declared that the crime of continuous sexual abuse of a minor under Penal Code § 288.5 was a continuous course of conduct crime, and, therefore, fell within the exception to the rule that jurors must unanimously agree on the particular acts committed by the defendant before convicting him. *Id.* at 301–04, 11 Cal.Rptr.2d 694. As such, the court acknowledged that individual jurors may properly select different acts to meet the threshold of three acts of molestation required to establish the prohibited course of conduct, inasmuch as

> proof of specific acts of molestation by a resident child molester may be murky, even where evidence of the cumulative conduct is clear. *By criminalizing a course of conduct, Penal Code [§ ] 288.5 intended to make proof of specific acts unnecessary. The fact that the jurors select different acts to satisfy the numerical threshold for a course of conduct does not render the statute unconstitutional.* Rather, it assures the jury must agree there is a course of conduct and prevents conviction based on a single act or a series of acts upon which the jury does not agree.

*Id.* at 307, 11 Cal.Rptr.2d 694 (emphasis added).

7. California Penal Code § 288.5 provides:
 **Continuous sexual abuse of a child**
 (a) Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of section 1203.066, or three or more acts of lewd or lascivious conduct under Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years.
 (b) To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number.

(c) No other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative. A defendant may be charged with only one count under this section unless more than one victim is involved in which case a separate count may be charged for each victim.

8. Determining the constitutionality of HRS § 707–733.5 is an issue of first impression for this court. Notwithstanding the legislature's reliance on California Penal Code § 288.5 to enact HRS § 707–733.5 and despite the State's analysis of cases addressing the constitutionality of Penal Code § 288.5 in its Answering Brief, the majority fails to cite to any case discussing the constitutionality of Penal Code § 288.5 to offer guidance to this court.

Similarly, in *People v. Avina,* 14 Cal. App.4th 1303, 18 Cal.Rptr.2d 511 (1993), the court held that Penal Code § 288.5 does not unconstitutionally deprive a defendant of due process and a unanimous verdict. The court first determined that the legislature defined the prohibited offense under Penal Code § 288.5 as a continuous course of conduct:

> Neither instruction nor election are required ... if the case falls within the continuous course of conduct exception. This exception arises in two contexts. The first is when the acts are so closely connected that they form part of one and the same transaction, and thus, one offense. The second is when the statute contemplates a continuous course of conduct of a series of acts over a period of time.
>
> ....
>
> Subdivision (b) of the statute states expressly that it is to be treated as a continuous-course-of-conduct crime for purposes of the unanimity rule; that unanimity is not required on any particular acts of molestation. Obviously the Legislature *intended* to create a course-of-conduct offense.
>
> ....
>
> That [Penal Code § ] 288.5 can, in theory, be violated by committing only three individual acts does not remove it from the course-of-conduct category.... The three-act requirement merely sets a "baseline" for measuring the course of conduct, while "the continuous-access requirement makes clear that the statute was targeted at the resident child abuse situation, where problems with generic testimony are most likely to arise, and was not to be used against individuals who have only transient contact with the alleged victim." ... Like other course-of-conduct crimes, [Penal Code § ] 288.5 focuses on "a series of acts occurring over a substantial period of time, generally on the same victim and generally resulting in cumulative injury." As with nonsexual child abuse and spousal battery, the victims "are likely to be unwilling to report their abuse to the authorities due to fear of physical and/or emotional retaliation" by the abuser.

Section 288.5 displays a final characteristic of the course-of-conduct crime, one of substantial benefit to a defendant. When a criminal statute punishes a course of conduct, the prosecution may not divide that course up into multiple counts of the offense; the entire continuous course constitutes only a single violation of the statute. The Legislature expressly incorporated this attribute of the course-of-conduct crime in [Penal Code § 288.5], subdivision (c): "... A defendant may be charged with only one count under this section unless more than one victim is involved in which case a separate count may be charged for each victim."

*Id.* at 1309–11, 18 Cal.Rptr.2d 511 (citation, some internal brackets, and formatting omitted and emphasis in the original). The court then held that, by defining a continuous course of criminal conduct in Penal Code § 288.5, the legislature did not deprive defendants of due process, and, subsequently, a unanimous jury verdict, reasoning that,

> [w]hile jurors might have disagreed about particular acts, there was no room here for disagreement about what criminal course of conduct, if any, defendant engaged in. In a prosecution for a course-of-conduct offense, where the evidence shows only a single course of conduct, the jury need not be instructed on a need for unanimity as to the conduct supporting the conviction.

*Id.* at 1313, 18 Cal.Rptr.2d 511.

In *People v. Gear,* 19 Cal.App.4th 86, 23 Cal.Rptr.2d 261 (1993), the minor victim alleged that the defendant sexually assaulted her at least twenty times. The defendant was subsequently convicted on one count of continuous sexual abuse of a minor, in violation of Penal Code § 288.5. On appeal, the defendant asserted that Penal Code § 288.5 was unconstitutional on the ground that it deprived him of his right to a unanimous jury verdict by allowing a conviction without requiring jury unanimity as to which three underlying acts supported the conviction. Rejecting the defendant's argument, the court noted that the defendant virtually ignored the established continuous course of conduct exception to the requirement of jury unanimity on which specific acts the defen-

dant committed. *Id.* at 91, 23 Cal.Rptr.2d 261. The court recognized that the continuous course of conduct exception "arises ... when, as here, the statute contemplates a continuous course of conduct of a series of acts over a period of time[,]" *id.* at 91–92, 23 Cal.Rptr.2d 261 (citations omitted), and, thus, clarified that

> [t]he crime of continuous sexual abuse of a child ([Penal Code] § 288.5) is a continuous[-]course-of-conduct crime and therefore falls within the exception to the rule that jurors must agree on the particular criminal acts committed by the defendant before convicting him.... *[Penal Code § ] 288.5 was not enacted without due regard for and in contravention of the constitutional requirement that an accused cannot be convicted of a crime without a unanimous verdict of a jury of his peers. This is so because [Penal Code § ] 288.5 criminalizes a continuous course of conduct;* the *actus reus* of the crime is the course of conduct encompassing the individual acts of sexual conduct. The statute requires jury unanimity with respect to the course of conduct—i.e., the *actus reus*—and thereby satisfies the constitutional requirement.... *The continuous-course-of-conduct crime does not require jury unanimity on a specific act, because it is not the specific act that is criminalized.* The *actus reus* of such a crime is a *series* of acts occurring over a substantial period of time, generally on the same victim and generally resulting in cumulative injury. *The agreement required for conviction is directed at the appropriate actus reus: unanimous assent that the defendant engaged in the criminal course of conduct.*

*Id.* at 92–93, 23 Cal.Rptr.2d 261 (internal citations and quotation marks omitted and emphases added). The court further rejected the defendant's argument that Penal Code § 288.5 violated his right to due process, inasmuch as the court noted that "the defendant does not have a right to notice of the specific time or place of an offense occurring within the applicable limitation period" and the defendant's ability to present a defense was not violated. *Id.* at 95–96, 23 Cal. Rptr.2d 261. Specifically, the court explained that

[t]he modern answer to the rhetorical inquiry as to how defendant can prepare a defense against nonspecific molestation charges is that, at a minimum, a defendant must be prepared to defend against all offenses of the kind alleged in the information as are shown by evidence at the preliminary hearing to have occurred within the timeframe pleaded in the information.

At the preliminary hearing, the officer testified the molestations by [the defendant] began in June 1990 as [the victim] was completing the sixth grade. The officer said the molestations took place in the master bedroom, the bathroom off the master bedroom and the garage.... The officer related a description of acts of oral copulation in the bathroom as well as in the garage.... [W]e find the officer's testimony was very similar to the testimony provided by [the victim] at trial, and, coupled with the information, provided sufficient due process notice to [the defendant] of the charge of engaging in a continuous course of sexual abuse against [the victim].

... [The defendant] presented an all-or-nothing defense based on credibility-either he is telling the truth and he did not commit any act of molestation or [the victim] is telling the truth and he is guilty.... *[T]he defendant in a resident child molester case rarely can offer a successful alibi or wrongful identification defense. The inability to do so is not caused by the nonspecificity of dates, locations and other details of the generic charges; rather, the inability has to do with the fact that the defendant in a resident child molester case has lived with or has had access to the victim on a continuous basis.*

*Id.* (internal quotation marks and brackets omitted and emphasis added).

In *People v. Whitham,* 38 Cal.App.4th 1282, 45 Cal.Rptr.2d 571 (1995), the court, once again, rejected a constitutional challenge to Penal Code § 288.5. The court held that subsection (b) of Penal Code § 288.5, "which expressly dispenses with the need for jury unanimity on the identity of the specific acts constituting the crime, does not trench upon either the Constitution of California or

the due process clause of the constitution of the United States." *Id.* at 1286, 45 Cal. Rptr.2d 571. In so holding, the court reasoned that Penal Code § 288.5(1) did not deprive a criminal defendant of the right to a unanimous jury verdict, inasmuch as jurors are required to unanimously find that the defendant engaged in the prohibited course of conduct, and (2) satisfied the due process requirements of the United States Constitution because, in order to convict a defendant under Penal Code § 288.5, "the jurors must unanimously agree that this chain of behavior has been proven beyond a reasonable doubt." *Id.* at 1297–1298, 45 Cal.Rptr.2d 571. Moreover, in *People v. Vasquez*, 51 Cal.App.4th 1277, 59 Cal.Rptr.2d 389 (1996), the court reiterated that Penal Code § 288.5 does not violate a defendant's constitutional right to due process of law and expressed that,

> [n]o right or legitimate interest of defendants is invaded by applying [Penal Code § ] 288.5 to conduct which occurs during separate periods of recurring access to a child. A defendant's right to notice of the charges against him, his right to present a defense, and his right to a unanimous jury verdict are all affected in the same manner and degree by generic testimony, whether such testimony relates to multiple separate incidents, a truly "continuous" course of conduct, or an interrupted one.... [G]eneric testimony by the child victim does not impermissibly interfere with constitutional rights.... If several acts are separately charged, the defendant can be convicted only if the jury agrees unanimously on each act, whereas the jurors only must agree unanimously that a total of three or more acts occurred to convict under [Penal Code § ] 288.5.

*Id.* at 1286–1287, 59 Cal.Rptr.2d 389 (formatting omitted). Furthermore, in *People v. Adames*, 54 Cal.App.4th 198, 62 Cal.Rptr.2d 631 (1997), the court held that, although Penal Code § 288.5 permitted a jury to convict a defendant of an offense based on three or more acts of sexual abuse over a period of at least three months, without requiring a jury to unanimously agree on what three acts were committed, it did not violate a defendant's right to a fair trial by jury or right to due process, inasmuch as Penal Code § 288.5

contemplates a continuous-course-of-conduct offense:

> We hold that the absence of a requirement that the jury unanimously agree on the particular incidents underlying a violation of [Penal Code § ] 288.5 does not violate the federal [c]onstitution, specifically, the [s]ixth [a]mendment guarantee of the right to a jury trial or the [f]ourteenth [a]mendment guarantee of due process..... *The continuous-course-of-conduct crime does not require jury unanimity on a specific act, because it is not the specific act that is criminalized.* In such a situation, no jury unanimity instruction is required.

*Id.* at 207–208, 62 Cal.Rptr.2d 631 (internal citations and quotation marks omitted and emphasis added). *See also People v. Johnson*, 28 Cal.4th 240, 121 Cal.Rptr.2d 197, 47 P.3d 1064, 1066 (2002) ("In a prosecution under [Penal Code § 288.5], the trier of fact need unanimously agree only that the requisite number of specific sexual acts occurred, not which acts constituted the requisite number."). These cases aptly demonstrate the constitutionality of Penal Code § 288.5, inasmuch as it does not violate a defendant's right to a unanimous jury verdict or right to due process.

## C. HRS § 707–733.5(2) is constitutional and does not violate a defendant's right to a unanimous jury verdict or his right to due process.

I agree that an accused is guaranteed the right to an unanimous verdict in a criminal prosecution under article 1, sections 5 and 14 of the Hawai'i constitution and the right to due process under the 5th and 14th amendments to the United States Constitution as well as article 1, sections 5 and 14 of the Hawai'i Constitution. HRS § 707–733.5 does not conflict with or deny a defendant such constitutional rights.

HRS § 707–733.5 was enacted in 1997 in order to remedy some of the problems of pleading, proof and jury instruction that had arisen in the prosecution of "resident child molesters." The legislature expressly articulated that sexual assault in the first, second, third, and fourth degrees do not constitute "continuing offenses," inasmuch as they rep-

resent distinct acts and, therefore, separate offenses. However, recognizing the inherent problems involved in prosecuting "resident child molesters," the legislature made specifically clear that the criminal offense punished under HRS § 707–733.5 was based on a "continuing course of conduct"—the continuous sexual abuse of a minor.

It would be anomalous to rule HRS § 707–733.5(2) unconstitutional, as the majority holds. Indeed, when the legislature enacted HRS § 707–733.5, it took great care to protect a defendant's constitutional rights, in particular, the right to due process. Specifically, HRS § 707–733.5(3) provides that a defendant can only be charged with one count for each victim and cannot be charged with any other felony sex offense involving the same victim and occurring within the charged time period. Moreover, HRS § 707–733.5(2) compels that the jury unanimously agree, beyond a reasonable doubt, that the defendant engaged in three or more acts over a period of time. Finally, HRS § 707–733.5(1)(a) mandates that the defendant reside in the same home or have recurring access to the minor under the age of 14. As such, HRS § 707–733.5(2) survives constitutional scrutiny. In fact, Rabago, having been charged and convicted of one count of continuous sexual assault of a minor for Complainant A and one count of continuous sexual assault of a minor for Complainant B, rather than multiple counts of sexual assault, is a beneficiary of HRS § 707–733.5.[9]

In conclusion, the California courts, in *Higgins, Avina, Gear, Whitham, Vasquez, Adames,* and *Johnson,* overwhelmingly held Penal Code § 288.5 to satisfy due process requirements. The courts declared that, inasmuch as the legislature defined the prohibited offense under Penal Code § 288.5 as a continuous course of conduct, jurors need not unanimously agree on the three specific acts that comprised the crime, but need only agree that three or more acts occurred in the criminal course of conduct. Moreover, the California courts held that, inasmuch as Pe-

nal Code § 288.5 defined a continuous course of criminal conduct, defendants were not deprived of their constitutional right to due process. Similar to Penal Code § 288.5, HRS § 707–733.5(2) provides specific guidelines to determine that the offense being punished is the continuous sexual abuse of a minor. The Hawai'i legislature expressly contemplated a continuous course of criminal conduct offense under HRS § 707–733.5. As such, HRS § 707–733.5(2) does not require a jury unanimity instruction and, therefore, unlike the majority holds, does not violate *Arceo* and its progeny. In fact, even Rabago concedes that continuing course of conduct crimes are an exception to the *Arceo* jury unanimity requirement. Majority at 246, 81 P.3d at 1161.

In the instant case, Rabago's asserted deprivation of due process, in the context of a continuing course of conduct crime, as charged under HRS § 707–733.5, is utterly without merit. The prosecution exercised commendable discretion by charging Rabago with one count of continuous sexual assault of a minor, with respect to Complainant A, and one count of continuous sexual assault of a minor, with respect to Complainant B, rather than separate counts of molestation. The information framed the charges within a specific time frame, from August 19, 1998 to October 4, 2000. That information, coupled with Complainants A and B and Mother's testimonies, more than adequately apprised Rabago of the nature of the charges against him. Moreover, Rabago had a trial before a jury of his peers. Due process compels nothing more.

---

9. Rabago was charged as follows: .(1) one count of continuous sexual assault of a minor under the age of fourteen years, in violation of HRS § 707–733.5, for Complainant A; (2) one count of continuous sexual assault of a minor under the age

of fourteen years, in violation of HRS § 707–733.5, for Complainant B; and (3) two counts of sexual assault in the third degree, in violation of HRS § 707–732(1)(b), for Complainant C.